CLARKSON, J., dissenting.
Upon the allegations in his complaint the plaintiff prayed that he be adjudged the owner of certain lots in Wrightsville Beach and that the defendants' claim thereto be declared a cloud upon his title. The plaintiff waived his demand for damages and only two issues were submitted to the jury:
1. Is the plaintiff the owner of the record title to the lands in controversy, being the lands lying to the west of lots 23 and 24, and included within the extended northerly and southerly lines of said two lots to the sound, as indicated on the plat offered in evidence?
2. Have the defendants been in the open, notorious, hostile and adverse possession of said lands, claiming the same as their own for twenty years next before the commencement of this action, as alleged in the answer?
By consent of the defendants the court answered the first issue in the affirmative; to the second, the jury responded "No." It was thereupon adjudged that the plaintiff is the owner of the land in controversy and that a writ issue evicting the defendants and putting the plaintiff in possession.
It is admitted that the defendants are the owners of lots 23 and 24 as represented on the map. These lots are situated between the Atlantic Ocean on the east and the right of way of the Wilmington Seacoast Railroad Company on the west. The land in controversy lies to the west of lots 23 and 24, its northern boundary being a line represented by an extension of the north line of lot 24 from the right of way to Banks Channel, its southern boundary being a line represented to an extension of the south line of lot 23 from the right of way to the Channel, its eastern boundary the right of way, and its western boundary Banks Channel.
On 19 July, 1893, the Wilmington Seacoast Railroad Company, conveyed to Fannie S. Fishblate lots 23 and 24, together with a right of way on the disputed land, in the words following: "Also the right of way in and over the lands of the party of the first part, lying between the premises hereby conveyed and Banks Channel on the west, for the purpose of ingress and egress; but the right of way shall cease and *Page 761 
determine whenever the party of the first part shall open and establish streets or alleys extending from Banks Channel to the Ocean, either to the north or south of the premises hereby conveyed." The right of way here described is on the controverted lands; it is a right of ingress and egress granted the owner of lots 23 and 24 and must not be confused with the railroad company's right of way.
Mesne conveyances of this property, with the same provision for a right of ingress and egress, were duly executed and registered, and on 26 May, 1906, E. C. Holt and his wife executed and delivered to the defendants John D. Bellamy and Emma A. Bellamy a deed for the property above described with the same provision relating to the right of way on the land in suit.
The lots laid off on the map extend from the railroad track eastward to the highwater mark of the Ocean; the land between the railroad track and Banks Channel was not laid off in lots or subdivided; and no part of it was embraced in the deeds conveying title to lots east of the railroad. This land was the property of the Wilmington Seacoast Railroad Company. Title to the land sued for was, therefore, not included in the deed conveying lots 23 and 24 to the defendants.
Without objection the plaintiff offered in evidence the merger of the Wilmington Seacoast Railroad Company, the Wilmington Street Railway Company, and the Wilmington Gas Light Company, forming the Consolidated Railways, Light and Power Company, and the defendants admitted that the last named company is the successor to the record title of the Wilmington Seacoast Railroad Company.
The plaintiff introduced: (1) A deed from the Consolidated Railways, Light and Power Company to the Tidewater Power Company, dated 23 April, 1907, defendants admitting that the latter company is the successor of the record title of such property as the former company owned on Wrightsville Beach; (2) a deed from the Tidewater Power Company to the plaintiff dated 26 July, 1927. The plaintiff says that in this way he acquired title to the controverted land. Indeed, by consenting that an affirmative answer be given to the first issue the defendants admitted that the plaintiff has the record title. But it is contended by the defendants that no street or alley extending from Banks Channel to the Ocean has ever been opened and established as contemplated by the parties to the several deeds conveying title to lots 23 and 24. To meet this contention the plaintiff introduced a deed, dated 13 June, 1927, from the Tidewater Power Company (certain mortgagees joining in its execution) to the town of Wrightsville Beach, conveying several lots upon this condition: "Provided, however, and this deed is given upon the express condition that the said lots or parcels of land hereby conveyed to the said party of the third part shall be *Page 762 
opened up and used only for streets by the town of Wrightsville Beach, and, in the event that the said lots or parcels of land, or any one of them, shall hereafter cease to be used for such streets, this deed as to such lot or lots of land shall be void and such lot or lots of land shall thereupon immediately revert to the party of the first part, its successors and assigns."
Other facts material to the decision are set out in the opinion.
It is essential that we bear in mind the significance of the issues. Only two were formulated because they involve the whole controversy. The defendants admitted that the plaintiff has the record title and consented that to the first issue an affirmative answer should be given by the trial court. The principal question thus left undetermined was that of the defendants' adverse possession, although there are assignments of error based upon the court's refusal to dismiss the action, and upon the charge and the exclusion of evidence.
The real source of the controversy is the following clauses in the deed under which the defendants acquired title to lots 23 and 24: "Also the right of way in and over the lands of the party of the first part, lying between the premises hereby conveyed and Banks Channel on the west, for the purpose of ingress and egress; but the right of way shall cease and determine whenever the party of the first part shall open and establish streets or alleys extending from the Banks Channel to the Ocean, either to the north or south of the premises hereby conveyed."
These clauses are in all the deeds under which the defendants claim title. On 13 June, 1927, the Tidewater Power Company, which derived its title through mesne conveyances from the Wilmington Seacoast Railroad Company, as the defendants derived theirs, executed and delivered to the town of Wrightsville Beach certain lots to be "opened up and used only for streets"; and on the same day the Tidewater Company conveyed to the plaintiff several parcels of land, including that which is in controversy. The plaintiff took his title subject to this provision. It is immaterial, therefore, whether the streets, if opened at all, were opened by the plaintiff or his predecessor in title.
The defendants suggest that a letter written by the male defendant from Fiesole, Italy, on 10 June, 1927, led to an attempt by the Tidewater Power Company to open the streets in order to deprive the defendants of their right of ingress and egress. In view of the dates borne by the letter and the deed this would seem to be improbable; but if the streets were opened and established the motive is immaterial. Bell v. Danzer, 187 N.C. 224. *Page 763 
It is insisted by the appellants that the streets just referred to are not contiguous or so near to the defendants' property as to be available as a right of way from the Ocean to the Sound, and that it is impossible to open such streets without obtaining a reconveyance from the owners of lots 25 and 26 on the north or of lot 22 on the south of lots 23 and 24. In effect this is a contention that the proposed streets must adjoin lots 23 and 24, or at least one of them, and that the trial court should have given such construction to the several deeds. This interpretation would result in very seriously impairing, if not practically destroying, the entire scheme upon which the sale of lots and the erection of buildings was founded; it would require the appropriation of about one-third the building lots for the use of streets. It is manifest that such a result was not in the minds of the parties. For this reason, it may be, the defendants receded somewhat from this position by saying that the language of the deeds imports that the right of way should continue until a street or alley should be opened next to, or adjoining, or so near their lots as to be reasonably convenient for the owners' use and for the use of their guests and friends. But on this point the appellants have no ground of complaint, for the judge's instruction to the jury was in substantial agreement with this view, as is obvious from the following paragraph: "The language of this deed, gentlemen, from Holt to Mr. and Mrs. Bellamy, says that the right of way granted in said deed shall cease and determine whenever a street or alleyway shall be opened and established to the north or south of said lot. That means, I charge you, that the street must have been opened contiguous to said lot, and if not, so reasonably near thereto as to make it convenient to the owners of the lot to pass to the Ocean and Sound."
It is said by the appellants that the north street or alley is 260 feet from lots 23 and 24, and the one on the south is distant 210 feet, and that his Honor, instead of submitting the question to the jury, should have held as a conclusion of law that neither of them was a street or alley in contemplation of the provisions contained in the deeds.
We find no agreement or stipulation in the chain of title as to the proximity of the streets or alleys to the lots owned by the defendants. The deeds contain the contract of the parties; and by the terms thereof they must abide. In the interpretation of contracts the general rule is that a court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language; but if the terms are equivocal or ambiguous the jury may in proper cases determine the meaning of the words in which the agreement is expressed. This elementary principle is of frequent application in ascertaining the intention of the parties. Porterv. Construction Co., 195 N.C. 328; Patton v. Lumber Co., 179 N.C. 103;Faust v. Rohr, 166 N.C. 187; Young v. *Page 764 Jeffreys, 20 N.C. 357. The provision that the defendants' right of way should cease and determine upon opening and establishing the contemplated streets or alleys was clearly expressed; but the term "north or south of the premises" is ambiguous. For the reasons above stated we concur in his Honor's conclusion that the parties did not contemplate that the streets or alleys should necessarily adjoin the lots owned by the defendants, but that they should be near enough to enable the defendants with reasonable convenience to go to and from the Sound. As previously observed, the defendants seem to have conceded the correctness of this position. The jury were told to pass upon the question as preliminary or incidental to their determination of the time when the defendants' alleged adverse possession began. The question being incidental, a mere question of fact, a separate issue was not necessary. Bailey v. Hassell, 184 N.C. 450; Power Co. v.Power Co., 171 N.C. 248. Moreover, the defendants did not object to the issues of record or tender an issue addressed to the location of the streets. They should have done so if they desired to take advantage of the alleged error. Bank v. Bank, 197 N.C. 526; Drennan v. Wilkes, 179 N.C. 512;Maxwell v. McIver, 113 N.C. 288; Porter v. R. R., 97 N.C. 66;Clements v. Rogers, 95 N.C. 248.
The issues submitted and the verdict returned indicate that the appellants rested their case principally upon the defense of adverse possession. The defense presupposes the opening of the streets, because up to the time they were opened and established the defendants' right to use the land had been permissive; that is, the easement had remained permissive until the defendants had committed some act sufficient in character to point to an adverse claim. The permissive exercise of an easement does not silently bar the owner's title. The defendants cannot assert title under and at the same time against the plaintiff and those from whom his title was derived. Whitten v. Peace, 188 N.C. 298; Perry v. White, 185 N.C. 79;Vanderbilt v. Chapman, 175 N.C. 11; Snowden v. Bell, 159 N.C. 500.
The plaintiff offered evidence tending to show that the streets or alleys referred to in the deeds had not been opened and established until 1927; the defendants introduced deeds making provision for streets more than twenty years earlier. If the former position is correct the defendants' adverse possession could not have matured their title; and in reference to the latter the court charged the jury to answer the second issue in the affirmative if, after the streets had been opened and established, the defendants had continued in possession, exercising dominion and control over the land openly, notoriously, and adversely, claiming it as their own under known and visible boundaries for a period of twenty years. The jury found the facts to be otherwise, and returned a negative answer *Page 765 
to the second issue. The defendants' prayer for instruction with respect to adverse possession was properly declined because it disregards altogether the time when their easement in the property was to come to an end.
There was no error in the exclusion of evidence offered to show adverse possession by Harris and Holt, two of the defendants' predecessors in title. It is elementary that the owner's title to land may be defeated by the adverse possession of an occupant and those under whom he claims for a period of twenty years, and that the privity between successive occupants which will permit the tacking of their possessions is privity of physical possession not derived from or in subordination to the true owner.Vanderbilt v. Chapman, 172 N.C. 809. But for obvious reasons the defendants cannot avail themselves of the proposed testimony. In their answer they admit that they went into possession and exercised the easement under the Holt deed immediately after its execution on 26 May, 1906, and they offered evidence to the effect that they had not purchased any lot on the west side of the Wilmington Seacoast Railway, but only "an easement of ingress and egress." The single claim they had was the easement; they did not assert any other title to the disputed land at the time of their entry. By the terms of the deed, in a certain event the easement was to cease. Claiming under the deed granting the easement, the defendants confirmed it; by claiming the benefits they assumed the imposed burdens; they may not assail the deed upon which at the same time they base their right of entry.Hill v. Hill, 176 N.C. 194; Fort v. Allen, 110 N.C. 183; Fisher v.Mining Co., 94 N.C. 397; Curlee v. Smith, 91 N.C. 172; Leach v. Jones,86 N.C. 404; Grandy v. Bailey, 35 N.C. 221. This is not a denial of their right to establish subsequent adverse possession, but it is a denial of their right to tack their subsequent possession to the alleged adverse possession of those who occupied the property previously to the entry of the defendants under the limitations of their deed. The defendants offered evidence tending to show that their possession was permissive until 1907. Their claim of subsequent adverse possession was presented to the jury by instructions in which we find no error. It is manifest from what we have said that the motion to dismiss the action was properly denied.
No error.