FARMERS BANK, PILOT MOUNTAIN, NORTH CAROLINA v. MICHAEL T. BROWN DISTRIBUTORS, INC. (FORMERLY NED PELL DISTRIBUTORS, INC.); BRENDA M. BROWN, EXECUTRIX OF THE ESTATE OF MICHAEL BROWN; BRENDA M. BROWN; VIDA M. McCANLESS; PHILLIP H. PELL; AND O. M. NEEDHAM, JR.

No. 372PA82

(Filed 11 January 1983)

Guaranty § 2; Rules of Civil Procedure § 52.1; Trial § 58— guaranty agreement — question of condition precedent—sufficiency of trial court's findings of fact—not supporting conclusion of law

In an action tried without a jury where the trial court was to determine whether the parties intended to create a condition precedent to defendants' liability under a guaranty agreement, the trial court failed to make specific findings of the ultimate facts necessary to support its conclusion of law that no condition precedent existed to defendants' liability under the guaranty agreement. G.S. 1A-1, Rule 52(a)(1).

Justice MARTIN dissenting.

Chief Justice BRANCH and Justice EXUM join in this dissenting opinion.

WE allowed defendants' petition for discretionary review from the decision of the Court of Appeals, 57 N.C. App. 313, 291 S.E. 2d 317 (1982), on 3 August 1982. *Long, Judge,* tried this action, without a jury, at the 9 February 1981 Session of Superior Court, SURRY County. Judgment was entered for plaintiff on 12

February 1981. Defendants appealed to the Court of Appeals and that court affirmed.

In this appeal, we review the sufficiency of the trial court's findings of fact to determine if they support the crucial conclusion of law made. In so doing, we hold that the findings of fact are not sufficient to support the trial court's legal conclusion.

*Badgett, Calaway, Phillips, Davis, Stephens, Peed & Brown, by Richard G. Badgett and Herman L. Stephens, for defendants.*

*Otis M. Oliver and Finger and Parker, by Raymond A. Parker, II, for plaintiff.*

CARLTON, Justice.

I.

Of the original defendants in this action, only Phillip H. Pell and O. M. Needham, Jr., are involved in this appeal.

R. W. Smith, vice-president of Farmers Bank in Pilot Mountain, N.C., was plaintiff's sole witness and testified as follows:

Defendants, Needham and Pell, came to Smith's office at the bank sometime before 15 February 1977. Defendants told Smith they were selling their interests in the company they helped manage, Ned-Pell Distributors, Inc., and asked Smith if the bank would continue to carry the line of credit it previously had extended to the company. It was suggested the transaction be accomplished by issuing a new promissory note which would consolidate and renew three notes Needham and Pell had signed earlier in their capacity as corporate officers. The bank was to continue to extend the line of credit if:

(a) Michael Brown, president of Ned-Pell Distributors, Inc., together with his wife, Brenda M. Brown, and his mother-in-law, Vida M. McCanless, signed the promissory note as makers; and

(b) Defendants signed a guaranty agreement in which they guaranteed full and prompt payment of the note.

Smith further testified that the condition that Brown, his wife and mother-in-law sign the promissory note as makers was strictly defendants' requirement:

I stated in my deposition to the effect that cosigners were a requirement for Mr. O. M. Needham and Mr. Phil Pell. I meant by that statement, that it was a requirement of theirs, that this was a condition that they outlined, of one of the things that would happen if we would continue this line of credit.

Record at 15.

Smith also testified that the condition that defendants sign the guaranty agreement was the bank's requirement:

It was a requirement of the bank that Mr. Needham and Mr. Pell sign the guaranty agreement. Mr. Needham and Mr. Pell had been overseeing the operation, although the actual management was divested [sic] in Mr. Brown. Mr. Needham and Mr. Pell had been overseeing the management of Ned-Pell and the bank felt that we were in a good financial position as long as Mr. Needham and Mr. Pell operated or oversaw the operation. But at the time they sold their interest in this to Mr. Brown, we felt that there had to be some type of obligation on the part of Mr. Needham and Mr. Pell toward this loan.

Record at 14.

The record indicates the bank's condition—that defendants sign the guaranty agreement—was fulfilled. Defendants' term—that Brown, his wife and mother-in-law sign the note as makers—was not met, however. In an earlier action, it was found that the purported signatures of Brown's wife and mother-in-law on the note were forgeries. Summary judgment was granted the two women on all plaintiff's claims against them. Brown has since died. Smith testified that he thought there were no funds in Brown's estate, and that Ned-Pell Distributors, Inc., was insolvent and no longer existed. It appears, therefore, that defendants are the only parties to whom the bank can realistically look for payment.

This action involves, as Judge Long stated just prior to hearing evidence at trial, "the fairly narrow issue . . . as to whether there was a condition precedent involving this guaranty agreement." From the outset, defendants have contended that a condition precedent to their liability under the guaranty agreement

was that the bank obtain the signatures of each of the individual co-makers, but that the bank failed to do so because the signatures of Brown's wife and mother-in-law were forgeries. Judge Long concluded that no such condition precedent existed and entered judgment for the bank and against Pell and Needham for the unpaid principal of $60,000, interest to date of judgment of $16,200, and attorney's fees in the amount of $7,631.25.

The Court of Appeals affirmed, reasoning primarily that the evidence supported the trial court's findings and the findings supported the conclusion that no condition precedent existed.

## II.

The question dispositive of this appeal is whether the trial court's findings of fact are adequate to support its conclusion of law that the bank's procurement of valid signatures of Brenda M. Brown and Vida M. McCanless as co-makers on the note was not a condition precedent to defendants' liability under the guaranty agreement. The answer, readily apparent from a review of our applicable statutory and case law, is that the findings of fact are inadequate.

G.S. 1A-1, Rule 52(a)(1) (1969) requires that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the Court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." Under that rule, three separate and distinct acts are required of the trial court. It must (1) find the facts specially, (2) state separately the conclusions of law resulting from the facts so found, and (3) direct the entry of the appropriate judgment. *See Woodard v. Mordecai*, 234 N.C. 463, 470, 67 S.E. 2d 639, 644 (1951) (stating similar duties under G.S. 1-185 (1953), the statute G.S. 1A-1, Rule 52(a)(1) (1969) replaced). Here, we are concerned with the first requirement, that the trial court find the facts specially.

In *Quick v. Quick*, 305 N.C. 446, 290 S.E. 2d 653 (1982), this Court recently emphasized again the cruciality of this requirement. We said:

> Rule 52(a) does not, of course, require the trial court to recite in its order all evidentiary facts presented at hearing. The facts required to be found specially are those material and ultimate facts from which it can be determined whether the findings are supported by the evidence and whether they

support the conclusions of law reached. "Findings of fact may be defined as the written statement of the ultimate facts as found by the court, signed by the court, and filed therein, and essential to support the decision and judgment rendered thereon." 76 Am. Jur. 2d Trial § 1251 (1975). In other words, a proper finding of facts requires a specific statement of the facts on which the rights of the parties are to be determined, and those findings must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment. 89 C.J.S. Trial § 627 (1955).

In *Woodard v. Mordecai*, 234 N.C. at 470, 472, 67 S.E. 2d at 644, 645, this Court explained:

> There are two kinds of facts: Ultimate facts, and evidentiary facts. Ultimate facts are the final facts required to establish the plaintiff's cause of action or the defendant's defense; and evidentiary facts are those subsidiary facts required to prove the ultimate facts. (Citations omitted.) G.S. 1-185 requires the trial judge to find and state the ultimate facts only. (Citations omitted.)
>
> . . . .
>
> . . . Ultimate facts are those found in that vaguely defined area lying between evidential facts on the one side and conclusions of law on the other. (Citations omitted.) In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. (Citation omitted.) An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. (Citations omitted.) Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law. (Citations omitted.)

In summary, while Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require *specific findings* of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.

As stated by this Court, per Justice Exum, in *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E. 2d 185, 189 (1980):

> The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment—and the legal conclusions which underlie it—represent a correct application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead "to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system." *Montgomery v. Montgomery*, 32 N.C. App. 154, 158, 231 S.E. 2d 26, 29 (1977); *see, e.g., Crosby v. Crosby*, 272 N.C. 235, 158 S.E. 2d 77 (1967).

*Id.* at 451-52, 290 S.E. 2d at 657-58 (original emphasis).

As noted above, the narrow issue at trial was "whether there was a condition precedent involving this guaranty agreement," in short, whether a condition precedent[1] existed with respect to defendants' liability under the guaranty agreement. We note "[t]he existence of such a condition [precedent] depends upon the intent of the parties as gathered from the words they have employed, and it will be interpreted according to general rules of construction." 17A C.J.S., Contracts, § 338, at 318 (1963). Specifically, then, the trial court was to determine whether the parties intended the term that three valid signatures appear on the note to operate as a condition precedent to defendants' liability under the guaranty agreement. Because the language of the parties' agreement admits of more than one reasonable inference

---

1. A condition precedent is a fact or event " 'occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available.' " 3A A. Corbin, Corbin on Contracts § 628, at 16 (1960), *quoted in Parrish Tire Co. v. Morefield*, 35 N.C. App. 385, 387, 241 S.E. 2d 353, 355 (1978); *Cargill, Inc. v. Neuse Prod. Credit Ass'n*, 26 N.C. App. 720, 722-23, 217 S.E. 2d 105, 107 (1975). The issue in the case at bar does not concern the facts or events themselves that were to exist or occur before the right to the usual judicial remedies were to be made available. Rather, the issue is whether the parties *intended* the occurrence or nonoccurrence of certain facts or events to operate as a condition precedent to defendants' liability under the guaranty agreement.

as to the parties' intentions, and the evidence as to their intentions is conflicting, the question of what the parties' intentions were is a question of fact for the jury, or, as here, the court as trier of fact. This is so because in *Wallace v. Bellamy*, 199 N.C. 759, 155 S.E. 856 (1930), this Court held:

> In the interpretation of contracts the general rule is that a court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language; but if the terms are equivocal or ambiguous the jury may in proper cases determine the meaning of the words in which the agreement is expressed. This elementary principle is of frequent application in ascertaining the intention of the parties.

*Id.* at 763, 155 S.E. at 859 (citations omitted). *Accord Gore v. George J. Ball, Inc.*, 279 N.C. 192, 201, 182 S.E. 2d 389, 394 (1971); *Hunt v. Hunt*, 261 N.C. 437, 441-42, 135 S.E. 2d 195, 198-99 (1964); *Durham Lumber Co. v. Wrenn-Wilson Constr. Co.*, 249 N.C. 680, 686-87, 107 S.E. 2d 538, 542 (1959). *See also* 17A C.J.S., Contracts, § 611a, at 1224-28, § 617, at 1250-53 (1963). Whether the facts found establish a condition precedent is a question of law for the court. *See* 17A C.J.S., Contracts, § 611a, at 1224; 3 A. Corbin, Corbin on Contracts § 554, at 226-27 (1960). Stated simply, whether certain facts exist is a question for the trier of fact; whether the facts produce a legal effect is a question of law for the court.

As noted, G.S. 1A-1, Rule 52(a)(1) (1969) requires *specific findings* of the ultimate facts established by the evidence. In the case at bar, the trial court was to determine whether the parties intended to create a condition precedent to defendants' liability under the guaranty agreement. Applying the foregoing to the record before us, we note that the only finding of fact made by the trial court even remotely relating to the conclusion that no condition precedent existed was the second fact found as follows:

> Shortly before February 15, 1977, the defendants, Phillip H. Pell and O. M. Needham, Jr., informed R. W. Smith, Vice-President of Farmers Bank, that they wished to sell their stock in the corporation to Michael T. Brown, and inquired whether the bank would continue to extend its previous line of credit to the corporation under the new stockholder, if the new stockholder, Michael T. Brown, his wife, Brenda M.

> Brown, and his mother-in-law, Vida M. McCanless. [sic] signed the corporate notes [sic] as makers, and if the defendants, Phillip H. Pell, and O. M. Needham, Jr., signed a guaranty of payment of such indebtedness.
>
> R. W. Smith informed the defendants, Phillip H. Pell and O. M. Needham, Jr., that the bank would continue to extend credit under such arrangement.

Record at 33.

Based apparently on this single finding of fact, the trial court in its fifth conclusion of law determined that the condition that Brown, his wife and mother-in-law sign the note was not a legally effective one. The trial court concluded, "[t]hat valid signatures of Brenda M. Brown and Vida M. McCanless as co-makers or endorsers of the note were not a condition preceding [sic] which was communicated to the plaintiff so as to make the plaintiff responsible for obtaining these signatures and insuring their validity." Record at 35. This conclusion, of course, is the trial court's determination that no condition precedent existed to defendants' liability under the guaranty agreement.

Clearly, the trial court failed to make specific findings of the ultimate facts necessary to support this conclusion of law. The sole finding quoted above is simply a recitation of the trial court's understanding of the events leading to the agreement between the parties for a continuing extension of credit. The finding fails to state what the parties meant when they agreed that three valid signatures would appear on the new note. In short, the trial court's findings are completely devoid of any fact which would enable a trial court or an appellate court to conclude one way or another whether the parties intended procurement of three specified signatures on the note to operate as a condition precedent to defendants' liability under the guaranty agreement.

This serious omission by the trial court becomes particularly evident from a reading of the bank representative's testimony. Although various portions of Smith's testimony indicate he understood that Pell and Needham required the other signatures, other parts of his testimony indicate a different understanding. Needham testified that he and Pell had no intention of signing the guaranty agreement unless the others had signed the note. Yet,

in the face of this clear conflict in the evidence, the court failed to make the first finding of fact relating to the parties' intentions as to whether the term at issue was to operate as a condition to defendants' liability under the guaranty agreement.

This Court, therefore, is left with no means of reviewing the trial court's order to determine the propriety of the conclusions reached. We have no way of knowing which evidence the court found credible. As we said in *Coble*:

> In the absence of such findings, this Court has no means of determining whether the order is adequately supported by competent evidence. *Crosby v. Crosby, supra.* It is not enough that there may be evidence in the record sufficient to support findings which *could have been made.* The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine *de novo* the weight and credibility to be given to evidence disclosed by the record on appeal. *Knutton v. Cofield,* 273 N.C. 355, 160 S.E. 2d 29 (1968); *Davis v. Davis,* 11 N.C. App. 115, 180 S.E. 2d 374 (1971).

300 N.C. at 712-13, 268 S.E. 2d at 189.

The dearth of factual findings is more pronounced when the conclusion of law is broken down into its three parts. The judge concluded: (1) that valid signatures on the note were not a condition precedent; (2) which was communicated to plaintiff; (3) so as to make plaintiff responsible for obtaining these signatures and insuring their validity. We are unable to glean a single finding of fact from the court's order which would support any of these conclusions. Indeed, as demonstrated below, the second fact the trial court found would seem to support a conclusion of law contrary to that which it made.

## A.

Conditions precedent "are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." 3A A. Corbin, Corbin on Contracts § 628, at 16 (1960). As noted above, the trial court found that defendants inquired:

*whether* the bank would continue to extend its previous line of credit to the corporation under the new stockholder, *if* the new stockholder, Michael T. Brown, his wife, Brenda M. Brown, and his mother-in-law, Vida M. McCanless. [sic] signed the corporate notes [sic] as makers, and *if* the defendants, Phillip H. Pell, and O. M. Needham, Jr., signed a guaranty of payment of such indebtedness.

Record at 33 (emphasis added). In *Jones v. Palace Realty Co.*, 226 N.C. 303, 37 S.E. 2d 906 (1946), this Court held: "The weight of authority is to the effect that the use of such words as 'when,' 'after,' 'as soon as,' and the like, gives clear indication that a promise is not to be performed *except upon the happening of a stated event." Id.* at 306, 37 S.E. 2d at 908 (emphasis added) (citation omitted). Use of the words "whether" and "if" obviously are words of "the like" which give "clear indication that a promise is not to be performed except upon the happening of a stated event," the definition of a condition precedent. The language of the agreement, as expressed in the trial court's second finding of fact, indicates that the valid signatures of the three designated makers was a condition precedent. As written, however, the finding also indicates the condition was the bank's, an implication not supported by any of the evidence. In adopting for its finding of fact ambiguous language similar to that which Smith used in testifying about his understanding of the agreement, the trial court merely perpetuated the ambiguity. In so doing it failed to resolve the issue as to what the parties meant when they included in their agreement the term that three valid signatures appear on the note.

### B.

The trial court also concluded the term requiring valid signatures on the note of the three makers was not a condition precedent "which was communicated to the plaintiff . . . ." Again, the trial court's second finding of fact supports only the conclusion that this term was communicated to plaintiff.

### C.

Finally, the trial court wrote that the term requiring valid signatures on the note was not such "as to make the plaintiff responsible for obtaining these signatures and insuring their

validity." It would be premature to determine here whether plaintiff had a duty to obtain valid signatures, assuming the condition precedent existed. However, it should be noted that plaintiff was the only party in a position to do so. Smith testified the bank drew up the note the day *after* defendants signed the guaranty agreement; the bank gave the note to Brown who later returned to the bank the note with the purported signatures of his wife and mother-in-law. The bank then apparently maintained possession of the note. In short, it appears the bank had the note in its control at all times. If the bank had wished to insure that valid signatures on the note were obtained, and, thus, that its right to hold defendants liable on the guaranty agreement was perfected, it could have insisted that all three makers of the note sign the note in its presence.

### III.

The Court of Appeals was entirely correct in stating that an appellate court is bound by a trial court's findings of fact when there is some testimony to support them, even if there is evidence to the contrary that would support a different finding. That court erred, however, in holding that the fact found by the trial court supported its conclusion of law.[2]

We do note that there is some evidence in the record from which findings of fact *could* be made to support a conclusion that no condition precedent existed. There is also ample evidence to support a contrary conclusion. This is precisely the point of our holding: What the evidence does *in fact* show is a matter the trial court is to resolve, and its determination should be stated in appropriate and adequate findings of fact. Our statement in *Coble*, reiterated in *Quick*, is equally pertinent here:

2. Specifically, the Court of Appeals held:

In this case there was evidence consisting of Mr. R. W. Smith's testimony to support the court's finding that defendants told Smith that they would sign a guaranty in addition to the other signatures on the corporate note. This in turn supported the trial court's conclusion of law that the valid signatures of Brown and McCanless on the note were not a condition precedent to defendants' liability.

*Farmers Bank v. Michael T. Brown Distrib., Inc.*, 57 N.C. App. at 317, 291 S.E. 2d at 319.

Our decision to remand this case for further evidentiary findings is not the result of an obeisance to mere technicality. Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated. Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Coble v. Coble,* 300 N.C. at 714, 268 S.E. 2d at 190; *Quick v. Quick,* 305 N.C. at 458, 290 S.E. 2d at 661.

We hold, therefore, that the findings of fact in the trial court's order are insufficient, for the reasons discussed in this opinion, to support the conclusion of law made. For the trial court to fully comply with the principles discussed in this opinion, its order must be vacated and a new hearing held so that it can make adequate and appropriate findings of fact and conclusions of law. *Quick v. Quick,* 305 N.C. at 457-59, 290 S.E. 2d at 661-62.

In light of the disposition of this appeal, we need not consider other matters the parties raised or the Court of Appeals discussed.

The decision of the Court of Appeals is reversed and the trial court order filed 18 March 1981 is vacated. This cause is remanded to the Court of Appeals with instructions to remand to the Superior Court, Surry County, for further proceedings consistent with this opinion.

Reversed and remanded.

Justice MARTIN dissenting.

I respectfully dissent. This case was tried by Judge Long, sitting without a jury. He had the duty to pass upon the credibility of the witnesses, to accept or reject testimony. He had to resolve any contradictions in the evidence, and the ultimate issue was for him to find. *Cogdill v. Highway Comm. and Westfeldt v. Highway*

*Comm.*, 279 N.C. 313, 182 S.E. 2d 373 (1971); *Knutton v. Cofield*, 273 N.C. 355, 160 S.E. 2d 29 (1968); *Reynolds Co. v. Highway Commission*, 271 N.C. 40, 155 S.E. 2d 473 (1967); *McCallum v. Insurance Co.*, 262 N.C. 375, 137 S.E. 2d 164 (1964); *Boylan-Pearce, Inc. v. Johnson, Commissioner of Revenue*, 257 N.C. 582, 126 S.E. 2d 492 (1962).

The majority opinion found that there is evidence in the record to support findings of fact upholding a conclusion that no condition precedent existed. It then determined that Judge Long failed to make sufficient findings of fact to support the legal conclusion that there was not a condition precedent to defendant's liability under the guaranty agreement. I consider the findings by Judge Long to be sufficient. Judge Long found as facts, *inter alia*, the following:

(1) On or before February 15, 1977, the defendants, Phillip H. Pell and O. M. Needham, Jr., had negotiated several loans from the plaintiff, Farmers Bank, for a corporation named Ned-Pell Distributors, Inc., of which they were the principle [*sic*] stockholders. The notes were signed by officers of the corporation.

(2) Shortly before February 15, 1977, the defendants, Phillip H. Pell and O. M. Needham, Jr., informed R. W. Smith, Vice-President of Farmers Bank, that they wished to sell their stock in the corporation to Michael T. Brown, and inquired whether the bank would continue to extend its previous line of credit to the corporation under the new stockholder, if the new stockholder, Michael T. Brown, his wife, Brenda M. Brown, and his mother-in-law, Vida M. Mc-Canless, signed the corporate notes as makers, and if the defendants, Phillip H. Pell and O. M. Needham, Jr., signed a guaranty of payment of such indebtedness. R. W. Smith informed the defendants, Phillip H. Pell and O. M. Needham, Jr., that the bank would continue to extend credit under such arrangement.

(3) On or about February 15, 1977, the bank prepared a new note in the amount of Seventy-Five Thousand Dollars ($75,000.00) to consolidate old notes signed by corporate officers. The new note was signed by officers of the corporation

and by Michael T. Brown (Individually) in the presence of R. W. Smith. Michael T. Brown then took the note from the bank to have it signed by Brenda M. Brown and Vida M. McCanless. Michael T. Brown later returned the note to the bank bearing the purported signatures of Brenda M. Brown and Vida M. McCanless.

(4) As a part of this same transaction, the defendants, Phillip H. Pell and O. M. Needham, Jr., signed a loan guaranty agreement on February 14, 1977, jointly and severally guaranteeing full and prompt payment of any indebtedness of Ned-Pell Distributors, Inc., to Farmers Bank, to the extent of Seventy-Five Thousand Dollars ($75,000.00), plus interest, and all costs, expenses and reasonable attorney's fees incurred in endeavoring to collect said indebtedness or in enforcing the guaranty agreement.

It is not required that the judge find all evidentiary facts, but only those material and ultimate facts from which it can be determined whether they are supported by the evidence and whether such facts support the conclusions of law and the judgment. *Quick v. Quick*, 305 N.C. 446, 290 S.E. 2d 653 (1982). The facts found show:

(1) Prior to 15 February 1977 defendants had established a line of credit with plaintiff with the notes being executed by the corporate defendant.

(2) Pell and Needham advised plaintiff that they wished to sell their stock in defendant corporation to Brown and inquired whether the bank would continue to extend the line of credit to the corporation if Brown, his wife, and Mrs. McCanless executed the notes as makers and defendants signed a guaranty of such indebtedness.

(3) The bank agreed to this arrangement.

(4) The bank prepared a note to consolidate old notes executed by the corporation. This note was signed by the corporation and by Brown individually.

(5) Brown then took the note from the bank to have it signed by Mrs. Brown and Mrs. McCanless.

(6) Brown later returned the note to the bank with the purported signatures.

(7) As a part of the same transaction, Pell and Needham signed the loan guaranty agreement in question.

These facts support the conclusion that there was no condition precedent requiring plaintiff to secure valid indorsements by Mrs. Brown and Mrs. McCanless on the note. The note was to replace previous notes executed by Pell and Needham. The bank did not give the note to Brown as its agent to get the signatures. Brown "took the note from the bank" to have it signed. Had there been a condition precedent as argued by defendants, the bank would never have allowed defendants (whose corporate debt was being extinguished by the new note) to secure the signatures required. The actions of the parties speak louder than their words. *Powers v. Sternberg*, 213 N.C. 41, 195 S.E. 88 (1938). The judgment complies with Rule 52(a)(1) of the North Carolina Rules of Civil Procedure.

The court's finding that plaintiff would continue to extend credit to the corporation if Brown and his wife and Mrs. McCanless signed the notes as makers and if defendants would execute a guaranty, is a far cry from a finding that defendants would not be liable unless plaintiff got Mrs. Brown and Mrs. McCanless to indorse the notes. The scheme presented to the plaintiff was for the protection of the bank and not to benefit Pell and Needham. The purpose of the proposition was to determine the conditions under which the bank would extend credit to the corporation, not to establish conditions under which Pell and Needham would guarantee the loan. Pell and Needham were trying to entice the bank to extend the credit so they could sell the corporation and eliminate the liability on the notes then outstanding. Defendants and Brown were seeking to satisfy the plaintiff's conditions to extend credit to the corporation, not to protect Pell and Needham.

The majority apparently orders the case remanded to the superior court for a new hearing. At the very most, the case might be remanded for additional findings of fact.

I find the judgment of Judge Long to be proper and vote to affirm the decision of the Court of Appeals.

Chief Justice BRANCH and Justice EXUM join in this dissenting opinion.