J. G. NEAL v. B. F. FREEMAN and others.

*Surety and Principal—Forbearance—Diligence—Agent and Principal—Interest—Demand.*

1. A creditor is not bound to a surety for active diligence against the principal, for it is the contract of the surety that the principal shall pay the debt ; and the surety will not be discharged upon mere forbearance to sue, even if accompanied by a failure on the part of the creditor to inform him of the principal's want of punctuality. Due diligence is a question for the court, and it is not error to refuse to submit an issue involving it to the jury.

2. A principal is entitled to interest on money collected by his agent only from demand (date of summons here) and default of agent.

(*Pipkin* v. *Bond,* 5 Ired. Eq., 91 ; *Thornton* v. *Thornton,* 63 N. C., 211 ; *Deal* v. *Cochran,* 66 N. C., 269 ; *Hyman* v. *Gray,* 4 Jones, 155, cited and approved.)

CIVIL ACTION tried at Spring Term, 1880, of McDOWELL Superior Court, before *Gilmer, J.*

The plaintiff, being the sheriff of McDowell county in 1874, employed the defendant Freeman to aid him in the collection of taxes for that year, and took from him as principal and the other defendants as his sureties, a bond, dated September 14, 1874, the condition of which was that, if the said Freeman should collect or cause to be collected, and pay over unto the said sheriff, the taxes committed to him, in amount $1086.21, " within the time prescribed by law," then the same to be void, &c.

The plaintiff alleges that the defendant Freeman had collected and failed to account for, of the taxes committed to him, the sum of $551.23 ; and it is to recover this amount that this action is brought. The defendants Flemming and Ledbetter admit the execution of the bond by them as sureties, but say, it was expressly limited to the payment of taxes, " in the time prescribed by law," and that the plain-

tiff without notice to them, and without their consent or knowledge, extended the time for collecting and paying over, from time to time, and made no demand on said defendants; that it was expressly agreed that the time for collecting should be limited to four months, and that the said Freeman should be required to settle within that time; but that instead thereof the plaintiff had extended the time, and had aided and encouraged the said Freeman in his delay and failure to comply with the conditions of their bond, and not only did not inform them of his failure but concealed it, and misinformed the defendants with reference to it, by stating to them that it would be " all right," and that he continued to so aid the said Freeman, and conceal his failure for more than a year after he had knowledge of it, and in so doing had lost his remedy against the defendant sureties; and that if plaintiff had given the defendants prompt notice of such failure, and had not extended the time for collection, they could have saved, to the plaintiff, the greater part of the amount not accounted for; but, that instead of so doing, he concealed the default until the time for collecting had passed.

On the trial the following issue was agreed to:

" What amount of taxes, if any, did Freeman collect and fail to pay over to the plaintiff, of the taxes placed in his hands for 1874?"

The plaintiff testified that he entrusted Freeman with the collection of taxes for two townships amounting to $1088.20, of which he had paid, at different times, $555.77, leaving a balance of $532.43. This amount the witness had accounted to the state for, so that the amount was due to himself. He put no tax books into Freeman's hands, but gave him a memorandum book, in which a list of the tax payers, and amounts due from them, were entered. On one occasion he called on Freeman for a settlement, but none was made—only some calculations—the defendants, Freeman and Flem-

ming, being present. ,At the instance of the former he wrote a letter to Ledbetter stating the amount he thought to be due from Freeman, which however turned out to be less than was really due. The following is a copy of the letter, written at Marion, January 11th, 1876, and addressed to Thomas Ledbetter:

" The report I have heard about B. F. Freeman I find is incorrect. I am sorry it got out, but I am not to blame for it. I have seen Freeman and am satisfied he will do what is right, and never intended to leave. He has made arrangements to settle up everything by court. I don't think you need be uneasy." (Signed J. F. Neal.)

" N. P. I find on examining my books, Freeman is behind only about $350 for the year 1874. J. F. N."

The *arrangement* referred to in said letter was a promise made by Freeman to Flemming to bring down some corn and bacon to be applied to the amount due from the former. At said settlement Freeman said something about offering a horse, or mortgaging one, but no horse was produced. Witness offered to take the horse, but none was offered. The amount found due at the settlement was about the amount claimed in the action, and was admitted by the parties present to be due. Freeman said at that time that he would send some corn or bacon down.

Witness gave Freeman a receipt, of which the following is a copy: " Received of B. F. Freeman, Dep. Shff., eleven hundred and thirty-four $\frac{49}{100}$ dollars on taxes due by him for the year 1873. This receipt includes the whole amount of taxes collected and amounts paid me in Freeman's townships, and also the amount of taxes exempt by commissioners. February 18th, 1874."

The defendant Freeman testified that the foregoing receipt covered all the taxes paid to the plaintiff and all the receipts heretofore given, but not all the taxes placed in his hands; that he had paid over all the taxes collected in 1873

and 1874. Witness further testified that, at the instance of the defendants, Flemming and Ledbetter, he came to the court house, and had a settlement in which the books were looked over, and three hundred and fifty dollars found to be due.

The note from plaintiff to Ledbetter was then procured by witness, who wished a statement to show to Ledbetter. At that time witness made a payment of $150.

Another calculation was made at Flemming's house but witness could not remember the result, but thought it about $350.

The defendant Flemming testified that in January, 1876, the plaintiff came to him and informed him that he had heard Freeman was about to leave, and advised witness to see him. Witness went to Ledbetter's the same day, and from there went to the plaintiff's office where they left Freeman. Witness afterwards went with the plaintiff to look at Freeman's horse, and suggested to him to take the horse, but plaintiff said he did not think it was necessary, and if deprived of the horse it might cripple him. Ledbetter said he would look after some bacon and corn which Freeman said he would deliver and turn over to them.

At the conclusion of the argument the defendants' counsel asked the court to instruct the jury, that if the plaintiff knew of the default of Freeman, it was his duty to use all reasonable diligence to obtain satisfaction of Freeman before the sureties could be held liable, and to determine the question of diligence the jury might look to the length of the delay, the negotiations with Freeman and all the circumstances of the case.

2. If the plaintiff as a creditor had done any act injurious to the sureties, or inconsistent with their rights, or if he had omitted to do anything which the law enjoined upon him, and the omission was injurious to the sureties, then, in either of such cases, the sureties would be discharged.

3. If the plaintiff had done any act which injuriously affected one of the sureties, so as to discharge him, it would serve to discharge all.

His Honor suggested that while the law asked to be charged might be very good law, it did not seem to be pertinent to the issue agreed to be submitted. Thereupon the counsel asked the court to submit the following issue : " Has the plaintiff used reasonable diligence ? " His Honor being of opinion that the evidence did not call for any such issue, declined to do so, and the defendants excepted.

The court instructed the jury to allow interest on the plaintiff's demand from the 10th day of January, 1875, that being the day upon which the plaintiff was required by law to settle the taxes of the previous year with the public treasurer. The defendant excepted to this instruction and insisted that the interest should be allowed only from the commencement of the action.

In response to the issue submitted, the jury found that the defendant Freeman had collected and failed to pay over the sum of $395 of the taxes committed to him, which sum the plaintiff remitted to $372. Judgment was rendered for that amount with interest from the 10th of January, 1875, and defendants appealed.

*Mr. G. W. Folk,* for plaintiff.
*Mr. W. W. Flemming,* for defendants.

RUFFIN, J. - Several points were argued at the bar in this case, but as the record presents two only, we shall confine our consideration to them, the first being the exception to the refusal of the judge to submit the issue proposed as to the diligence used by the plaintiff ; and the second, to the allowance of interest upon the claim of the plaintiff.

As to the first : A creditor is not bound to a surety for active diligence against the principal, for it is the contract of the surety that the principal shall pay the debt,

and it is his business therefore to see that he does so. Consequently, a forbearance to sue, even if accompanied with a failure to inform the surety of the principal's want of punctuality, will not discharge the former. *Pipkin* v. *Bond*, 5 Ired. Eq., 91; *Thornton* v. *Thornton*, 63 N. C., 211; *Deal* v. *Cochran*, 66 N. C., 269.

Eliminate from the case before us the single feature of the delay on the part of the plaintiff to sue, and what else is there in the case that could possibly go to support the issue rejected by the court?

There was no release of any security; no change in the terms of their contract; no *contract* to forbear for a stipulated time; no tender of the amounts due and refusal; nothing in short which could imply bad faith on the part of the creditor, or a disregard, or even indifference to the rights and interests of the sureties.

In the argument much stress was put upon the plaintiff's failure to state the exact amount of their liability in the letter to the defendant Ledbetter. But it is perfectly manifest that this failure did not proceed from any fraudulent intent, and that it could not, and did not work any injury to any one; and as to the confidence in the principal, and in his doing what *what was right*, expressed in the letter, it was but an opinion (so intended and so understood) given to aid the surety in determining what was best for all parties to be done. So too with the treaty as to the horse. It was had with the full knowledge of the defendant, Flemming, and with his full concurrence as to every step taken in regard to it. And as to the other articles " to be turned over" by the principal in discharge of his indebtedness, that was the result of an "arrangement," not between him and the creditor, but between him and the sureties themselves, and so deposed to by the defendant Flemming. Due diligence was a question for the court, and seeing that the whole evidence taken together and supposing it all to be

true, did not establish a want of it in the plaintiff, his Honor properly refused to submit the issue to the jury.

In regard to the question of interest: We concur in the view taken by the defendants' counsel, at least, so far as to say, that it was error to have charged the defendants with interest so early as the 10th of January, 1875, at which time it does not appear that the defendant Freeman had collected any part of the amount he failed to account for. Collecting the money as agent of the plaintiff, he was not chargeable with interest until default made in payment after demand. *Hyman* v. *Gray*, 4 Jones, 155. Whether the bringing the action was such a demand as to entitle the plaintiff to interest from that date, is a question we have not considered, as it was conceded, both in the court below, and in the argument in this court.

As the sum allowed as interest was distinguished in the judgment rendered from the principal sum due, it is not necessary that we should direct a new trial, as the correction can be made here.

Accordingly it is adjudged that the plaintiff recover of the defendants the sum of $372 as principal money, with interest thereon from the date of the summons, and that the clerk of this court make the correction in the judgment in conformity with this opinion.

Thus modified the judgment of the court below is affirmed.

PER CURIAM. Modified and affirmed.