IN THE MATTER OF R. H. WRIGHT ESTATE, T. D. WRIGHT AND R. H. WRIGHT, JR., EXECUTORS, AND M. W. BALL, ADMINISTRATOR, C. T. A., AND R. H. WRIGHT, JR., AND T. D. WRIGHT, EXECUTORS OF THE LAST WILL AND TESTAMENT OF R. H. WRIGHT, DECEASED, v. M. W. BALL AND OTHER HEIRS AT LAW AND NEXT OF KIN OF R. H. WRIGHT.

(Filed 5 April, 1933.)

**Executors and Administrators E e—"Family agreement" relating to "remainder of estate" held to apply to both real and personal estate.**

Under the facts and circumstances of this case it is held that an agreement entered into by the heirs at law of the testator providing for the distribution "of the remainder of the estate" of the testator, applied to both the real and personal estate, and under its terms the respondents were entitled to the proportion designated in the agreement of the rents and profits from the testator's lands as against the life tenant under the will.

APPEAL by respondents, the "Ball Group," from *Small, J.,* at March Term, 1933, of DURHAM. Reversed.

The findings of facts and judgment of the court below are as follows:

"This cause coming on to be heard before Honorable Walter L. Small, judge presiding and holding the courts of the Tenth Judicial District, and being heard at Durham, in said district, on 2 March, 1933, upon the pleadings and the evidence offered by the parties, a jury trial having been waived, the court finds the following facts:

1. That R. H. Wright died on 4 March, 1929, leaving a last will and testament which was admitted to probate in common form in Durham County, a copy of said will being attached to the petition of the Durham Loan and Trust Company, receiver, in this cause and made a part of these findings of fact.

2. That a caveat to the will of R. H. Wright was filed in the Superior Court of Durham County, and on 19 November, 1929, a judgment was

entered in said cause by Honorable E. H. Cranmer, judge presiding, a copy of said judgment being attached to the petition of the receiver filed in this cause, and it is hereby made a part of these findings of fact.

3. That prior to the rendition of said judgment passing upon the validity of said will, and construing the same, all the heirs at law and next of kin of the said R. H. Wright, deceased, entered into an agreement referred to as the 'family agreement,' dated 5 November, 1929, for the purpose of determining the method of administration of the estate and its ultimate division among the parties to said agreement. A copy of said agreement is also attached to the petition of the receiver in this cause and is hereby made a part of these findings of fact.

4. That after the execution of said agreement, the executors named in the will of R. H. Wright, Sr., were removed and the First National Bank of Durham, North Carolina, was appointed receiver of said estate. That on 18 January, 1932, the said First National Bank of Durham suspended business and on 29 January, 1932, the Durham Loan and Trust Company was appointed receiver of said estate, and is now acting as such.

5. That several months after the execution of the 'family agreement,' the question arose between the representatives of Mrs. Lucy W. Ball, owning a one-third interest in the estate, and the representatives of Miss Mary E. Wright, the life tenant in two-thirds, and the children of T. D. Wright, the owner of the remainder of the two-thirds interest, as to the distribution of certain income derived from the property of the estate in the interval between 4 March, 1929, and the date of the 'family agreement,' 5 November, 1929. That without prejudice to the rights of either group, this income, about which the controversy arose, to wit: $21,620.95, was distributed, one-third to the Ball group and two-thirds to the Wright group, it being agreed that the question as to how said income should be distributed was to be finally passed upon by the Superior Court of Durham County.

6. That Miss Mary E. Wright, the life tenant, died on 16 June, 1932, leaving a last will and testament which has been duly admitted to probate in Durham County, in which will T. D. Wright and R. H. Wright are named as executors, and each of them have qualified and are now acting as such.

7. That the executors of the last will and testament of R. H. Wright opened an account upon their books as such executors entitled 'R. H. Wright and T. D. Wright, agents of Mary E. Wright,' and on said account they credited all income collected from the real estate of the R. H. Wright estate between the dates 4 March, 1929, and 5 November,

1929, and on the latter date, the total amount of said income was $21,620.95. That no part of said amount came from any source except the real estate which, by the last will and testament of R. H. Wright, was devised to Miss Mary E. Wright for her life.

That during said period the executors likewise kept a separate account on their books of the income from personal property, but the money received by them from both sources was deposited in one bank account. The item of $2,402.25 referred to in subsection (d), section 2, of the family agreement was paid by the executors out of the commingled income bank account and was set up on the books of the executors as an advancement to her.

8. That upon the appointment of the First National Bank of Durham, N. C., as receiver of the estate of R. H. Wright, it was duly notified of the claim of Miss Mary E. Wright to the entire amount of $21,620.95, and thereafter, upon the appointment of the Durham Loan and Trust Company, as receiver of said estate, it was likewise notified of such claim. That the estate of R. H. Wright was at the time of his death and still is amply solvent.

9. That the Ball group contend that under the terms of the 'family agreement' the said sum of $21,620.95 was distributable two-thirds to Miss Mary E. Wright, or her executors, and one-third to the Ball group. The executors of Miss Mary E. Wright contend that all of said income should have been paid to Miss Mary E. Wright during her life time, and after her death that the same is payable to said executors.

Upon the foregoing findings of fact the court being of the opinion that under the last will and testament of R. H. Wright, deceased, Miss Mary E. Wright was owner of a life estate in all of the real estate of the said R. H. Wright, deceased, and as such, was entitled to all of the income therefrom, and that no provision was made in the 'family agreement' which required her to surrender any part of said income.

It is now, therefore, ordered, adjudged and decreed that the executors of the last will and testament of Miss Mary E. Wright, have and recover of the receiver the sum of $21,620.95, with interest thereon from 5 November, 1929, until paid; and that the receiver of the estate of R. H. Wright pay the cost of this proceeding, to be taxed by the clerk. The payment of this judgment and costs shall be accounted for by the executors as a proper expense of the administration of said estate."

To the judgment as signed, the respondents, appellants, excepted, assigned error and appealed to the Supreme Court.

*B. M. Watkins and McLendon & Hedrick for appellees.*
*Brawley & 'Gantt for respondents, appellants.*

CLARKSON, J. The question involved: Does the "family agreement" set forth in the record require that the rent collected from real estate, between. the death of the testator and the date of said agreement, be distributed in accordance with the terms of said agreement, or did such rents remain the property of the life tenant Miss Mary E. Wright, under the will of R. H. Wright, Sr.? We think it should be distributed in accordance with the terms of the "family agreement."

R. H. Wright, Sr., died on 4 March, 1929, leaving a last will and testament, containing the following provision: "Item I. I give, devise, and bequeath unto my sister, Mary E. Wright, for her natural life, all of my property of every kind and character." The other provisions of the will are not necessary to be stated. A caveat to said will was filed, and a "family agreement" entered into in reference to the property of R. H. Wright, Sr. From 4 March, 1929, the date of R. H. Wright, Senior's death, until the "family agreement," on 5 November, 1929, the income from the real estate left to Mary E. Wright for life under the will, amounted to $21,620.95. If there had been no "family agreement" under the will this income would have gone to Mary E. Wright.

The controversy is thus stated in the findings of fact (9): "That the Ball group contend that under the terms of the 'family agreement' the said sum of $21,620.95 was distributable two-thirds to Miss Mary E. Wright, or her executors, and one-third to the Ball group. The executors of Miss Mary E. Wright contend that all of said income should have been paid to Miss Mary E. Wright during her life time, and after her death that the same is payable to said executors."

The "family agreement" was entered into on 5 November, 1929, by Mary E. Wright and the Ball group and others. The "family agreement" seems to have been carefully drawn and goes into minute detail, the sections which we think material for a decision of this controversy are: "2. Subject to the above provisions for Miss Mary E. Wright, *the remainder of the estate of R. H. Wright* shall be divided into *three equal parts, one-third* of which shall be delivered, conveyed or paid to *Mrs. Lucy W. Ball,* or her legal representatives, in fee·simple, and *two-thirds* to the First National Bank of Durham, N. C., trustee, in trust for the use of *Miss Mary E. Wright,* for the term of her natural life, etc. . . . (d) The sum of $2,402.25 heretofore paid to Miss Mary E. Wright shall be charged by the executors in their full settlement as disbursed for a debt and she shall not be required to account for the same."

What does the language mean "the remainder of the *estate* of R. H. Wright?" In Black's Law Dictionary (2d ed.), p. 439, is the following: "*Estate.* 1. The interest which any one has in lands, or in any other subject of property," etc., citing numerous authorities. At p. 440: 2. In another sense, the term denotes the property (real or personal) in which

one has a right or interest; the subject-matter of ownership; the *corpus* of property. Thus, we speak of a 'valuable estate,' 'all my estate,' 'separate estate,' 'trust estate,' etc. This, also, is its meaning in the classification of property into 'real estate' and 'personal estate.'"

In *Hunter v. Husted,* 45 N. C., at p. 142, *Nash, C. J.,* for the Court, said: "The word estate means ordinarily the whole of the property owned by any one, the realty as well as the personalty."

Then again, the detail of the $2,402.25 is set forth. This sum had been paid Mary E. Wright. It was specially provided in the "family agreement" that she should not be required to account for same. If the entire $21,620.95 income from the real estate was to go to Mary E. Wright, why was it not mentioned in the "family agreement"—*expressio unius est exclusio alterius?* On the contrary it was specially set forth that the remainder of the estate of R. H. Wright, Sr., two-thirds to be distributed to the so-called "Wright group" and one-third to the "Ball group." Construing the "family agreement" as a whole, we think it was the intention of all parties to make a final settlement of the controversy and the language used so indicates. For the reasons given the judgment of the court below is

Reversed.