PINK L. HUNT AND HOWARD J. HUNT v. ALBERT A. HUNT.

AND

PHILIP E. LUCAS, PUBLIC ADMINISTRATOR OF THE ESTATE OF CURTIS T. HUNT, DECEASED v. ALBERT A. HUNT.

(Filed 18 March 1964.)

**1. Compromise and Settlement—**

In an action by cotenants to recover their proportionate part of the funds received from the sale of the lands and deposited by one tenant to his sole account, evidence that there was a dispute as to the interests of plaintiffs in the fund and that this dispute was settled by the payment of a specified sum, tends to establish an affirmative defense, and the burden of establishing the defense of settlement is on defendant.

**2. Same—**

Where heirs at law sell in separate transactions different tracts of land inherited by them, a check by one tenant to another in full settlement of his

part of the "estate" will not be held, as a matter of law, a full settlement of all the transactions when there is evidence that the amount of the check was the sum justly due from only one transaction, and the question of settlement is properly submitted to the jury and motion to nonsuit correctly denied.

**3. Tenants in Common § 3—**

Evidence that one tenant in common collected the rents from the property is sufficient to support a cause of action in favor of the other tenants for an accounting of the rents.

**4. Frauds, Statute of § 6b—**

Plaintiff's evidence to the effect that the holder of the legal title orally promised to convey the property to his intestate in extinguishment of a debt owed the intestate is insufficient to establish an enforceable contract when the owner denies the alleged contract to convey, since the denial of the contract is a sufficient pleading of the statute of frauds and under the statute such contract is void notwithstanding the introduction of evidence tending to establish the parol agreement.

**5. Betterments § 1—**

Where the evidence tends to show a parol agreement by the owner of realty to convey to plaintiff's intestate to extinguish a debt and that intestate, in reliance upon the agreement, made improvements on the land, plaintiff administrator is entitled to recover for the estate the amount his intestate paid on the purchase money and the amount by which the improvements made on the land by his intestate enhanced its value, notwithstanding no recovery may be had on the parol agreement to convey in the face of defendant's denial thereof.

**6. Interest § 2—**

Where one tenant in common receives the total purchase price for the property and deposits same to his account under an agreement that the income from the fund should be paid to another tenant for life and at the death of such other tenant the principal should be paid to the surviving tenants, such agreement fixes the date from which interest on this sum accrues.

**7. Same—**

Interest does not begin to run on an account until there is a demand and refusal to pay, and therefore where an agent collects rentals from houses, interest on the amounts so collected does not begin to run until demand and refusal, and in the absence of evidence of any demand, interest begins to run only from the date of the institution of the action for the recovery of the funds.

APPEALS by defendant from *McLaughlin, J.*, March 16, 1963 Session of FORSYTH. These appeals were docketed and argued as Case No. 395 at the Fall Term 1963.

Because of their factual background these cases were consolidated for trial. Individual plaintiffs state two causes of action. The administrator states three. Separate judgments were rendered but one record was sufficient to present the questions this Court is called upon to answer.

In 1958 Pink L. Hunt, Howard J. Hunt, Albert A. Hunt and Curtis T. Hunt conveyed two lots in Winston-Salem to the Highway Commission. These properties were known as the Homeplace and the Miller property. The purchase price was $37,400, paid by the Commission's check to the joint order of the grantors. At the same time, Albert Hunt conveyed another tract (hereafter Belews Street) to the Highway Commission. The purchase price for this tract was $26,100.

Grantors, hereafter referred to by their given names, are the children of Theophilus Hunt and wife, Adeline Hunt. Theophilus died in 1923. He owned at his death a farm in Davidson County containing 120 acres, a tract in Forsyth County containing 10¼ acres, the Homeplace, and the Miller property. He devised his properties to his wife for life and, upon her death, to his four sons. The widow died in 1938. Curtis never married. After the death of his parents, he erected rental houses on the Homeplace and the Miller property. He died 25 December 1958.

The first cause of action in each suit alleged: Each plaintiff is entitled to one-fourth of the moneys derived from the sale of the Homeplace and Miller property. Pink, Howard and Curtis endorsed the Highway Commission's check for the purchase money and delivered it to Albert for deposit with the Savings & Loan Association. The parties agreed Curtis would have the income thereon for his life. At his death, the fund would be divided into four parts, one for each of the four brothers.

Defendant denied the alleged agreement. He admitted he deposited the check in his personal account in the Wachovia. He alleged: A controversy arose about how the money should be divided. This was settled when the four brothers met on 23 September 1958. At that time, Pink and Howard sold their interest in the farm in Davidson County, the 10¼ acres in Forsyth County, and relinquished any claim they might have to the proceeds of the sale of the Homeplace and Miller property to defendant and Curtis. Albert drew checks on a special account in the Wachovia, where he had deposited the moneys received from the Highway Commission. The check payable to Pink had written on its face, "Full settlement with P. L. Hunt for his part of the T. Hunt Estate in Forsyth and Davidson Counties." Howard was at that time indebted to Curtis in the sum of $1,800. Settlement was made with Howard by check drawn by Albert on his special account with Wachovia for $3,500. That check, likewise, had a statement showing that it was in full settlement of Howard's part "in the T. Hunt Estate in Forsyth and Davidson Counties." Curtis, thereafter, gave Albert all of Curtis' share in the proceeds derived from the sale of the properties to the Highway Commission.

The second cause of action, alleged by Pink and Howard, relates to rents collected from tenants occupying two houses on Cleveland Ave-

nue alleged by plaintiffs to have passed to them, Curtis and Albert, by inheritance from their mother. They make no claim for rents for houses erected on the property by Curtis.

Defendant, to defeat this claim, alleged: While his mother had legal title to this property, she held as a mere trustee for Curtis, who had furnished the purchase money.

Administrator's second cause of action is a claim for the $26,100 paid by the Highway Commission for property on Belews Street. He alleged: This property was prior to 1943 owned by Albert. He was at that time indebted to Curtis in a substantial sum. To extinguish this debt, Albert agreed to convey the Belews Street property to Curtis. No deed was made. Curtis took possession of the property. He erected several tenant houses thereon. Albert wired these houses for Curtis. Curtis paid him for this work. Curtis collected the rents on these properties until 1948 or thereabouts. From 1948 until Curtis' death, Albert collected the rents as agent for Curtis. Albert, at the request of Curtis, conveyed the property to the Highway Commission. Albert held the proceeds derived from the sale as a mere trustee for Curtis.

Albert admitted he held title to the Belews Street property. He denied the alleged parol contract to convey. He admitted that Curtis had erected tenant houses on the property and that he (Albert) had collected the rents. He alleged Curtis had released him from any obligation that might have existed with respect to the Belews Street property.

The administrator's third cause of action relates to rents collected by Albert from the tenants of the 12 houses constructed by Curtis on the four lots in Winston. Albert, the administrator alleged, collected these rents as agent for Curtis. Defendant denied the collection of rents for Curtis. He alleged a cross-action against the administrator for the sum of $3,793.06 for moneys paid for the benefit of Curtis' estate.

The jury found Pink and Howard were jointly entitled to recover $18,700 on their first cause of action, and $1,820 on their second cause of action. It found plaintiff administrator was entitled to recover $9,350 on his first cause of action, $26,100 on his second cause of action, and $13,-450 for rents. It found plaintiff administrator was not indebted on the counterclaim alleged by defendant. Judgments were entered on the verdicts. Defendant appealed.

*White and Crumpler and Hudson, Ferrell, Petree, Stockton, Stockton and Robinson for plaintiff appellees.*

*Deal, Hutchins and Minor for defendant appellant.*

RODMAN, J.   Defendant assigns as error the Court's refusal to allow his motions for nonsuit and directed verdicts. Because these assign-

ments are fundamental and are the errors principally relied on by defendant, they must be examined and their merit evaluated before considering other asserted errors. Since the motions are directed to all five causes of action alleged by plaintiffs, each having a foundation distinct from the others, we deal with the motions as they relate to each cause of action.

(1) *Proceeds of sale of the Homeplace and Miller property.* The following facts are admitted in the pleadings or established by the evidence: These properties were devised to defendant and his brothers by their father. The four sold to the Highway Commission. The check for the purchase price payable to all four grantors was endorsed by three and delivered to defendant. He endorsed and deposited the funds in a special account in his individual name. If nothing else appeared, the Court would have been warranted in directing the jury to find that each of the plaintiffs was entitled to one-fourth of the amount paid by the Highway Commission. To prevent that result, defendant alleged, and offered evidence from which the jury could have found, a dispute existed with respect to Pink's and Howard's interest in the fund (why and how controversy with respect to the division of the fund arose is not made clear by the evidence.) This dispute, according to defendant's allegations and evidence, was settled by the payment of $5,000 to Pink and $3,500 to Howard for their interest in the moneys received from the Highway Commission, as well as the 120 acre farm and the 10¼ acre tract in Forsyth. This was an affirmative defense. The burden of proof was on defendant. *Paving Company v. Speedways, Inc.,* 250 N.C. 358, 108 S.E. 2d 641; *Winkler v. Amusement Company,* 238 N.C. 589, 79 S.E. 2d 185.

Defendant's contention that the language, "Full settlement with P. L. Hunt for his part of the T. Hunt Estate in Forsyth and Davidson Counties," appearing on his check given when P. L. Hunt conveyed his interest in the 10¼ acre tract and the 120 acre farm in Davidson County is, as a matter of law, sufficient to defeat plaintiff's claims to the moneys paid by the Highway Commission cannot be sustained. The word "estate" as commonly used has many meanings. *Trust Company v. Wolfe,* 243 N.C. 469, 91 S.E. 2d 246; *In Re Estate of Wright,* 204 N.C. 465, 168 S.E. 664; *Powell v. Woodcock,* 149 N.C. 235, 62 S.E. 1071.

Whether the word "estate" written on check was understood by the parties to include the moneys paid by the Highway Commission was a question for the jury. *Lumber Company v. Construction Company,* 249 N.C. 680, 107 S.E. 2d 538; *Williams v. Insurance Company,* 209 N.C. 765, 185 S.E. 21; *Wallace v. Bellamy,* 199 N.C. 759, 155 S.E. 856; *Hite*

*v. Aydlett,* 192 N.C. 166, 134 S.E. 419. Plaintiffs testified that the checks were given and received in payment for their share of the 10¼ acres Forsyth County tract and the Davidson County land. To support their contention as to the meaning of the word "estate," they point to the fact that the revenue stamps on their deeds were exactly the amount they would have affixed for a sale for $8,500. They testified that the value of these two pieces was $20,000. They call attention to the fact that the moneys which the Highway Commission paid was not paid to the personal representative of the T. Hunt Estate but to them as individuals. They properly say that where an heir sells land which he inherits from his parent, the proceeds derived from that sale cannot be held as a matter of law to be a part of a parent's estate. Defendant is in no position to complain that the Court called on the jury to ascertain the meaning of the language defendant put on the check. It follows from what has been said that the Court properly refused to allow the motions to nonsuit or to direct verdicts on the first causes of action.

(2)  *Pink's and Howard's claims for rent.* The pleadings and evidence establish the fact that the legal title to this property was in Mrs. Hunt, mother of the four children. She died intestate. There is evidence for plaintiffs showing that Albert collected rents from this property from 1948 until Curtis' death in December 1958. Pink, Howard and Albert executed a deed to Curtis for this property in September 1958. Co-tenancy having been established, plaintiffs were entitled to an accounting for the rents collected. *Lovett v. Stone,* 239 N.C. 206, 79 S.E. 2d 479; *Whitehurst v. Hinton,* 209 N.C. 392, 184 S.E. 66; *McPherson v. McPherson,* 33 N.C. 391; 14 Am. Jur. pp. 99-100. Defendant was not entitled to nonsuits or directed verdicts on this cause of action for rents.

(3)  *Belews Street property.* The pleadings and the evidence show that this property was conveyed to Albert prior to 1943. It was his home. Plaintiff administrator, as a basis for his claim for the moneys paid by the Highway Commission for this property, alleges a parol contract by Albert in 1943 to convey to Curtis. He alleges he took possession, and erected tenant houses thereon. Albert, as his agent, collected the rents from these properties for Curtis. Albert, in recognition of Curtis' ownership of this property, and at Curtis' direction, conveyed it to the Highway Commission. He agreed to hold the proceeds for Curtis' benefit. Albert denied the alleged contract. He admitted Curtis had taken possession and erected houses thereon—Plaintiff offered evidence to establish the parol contract to convey, his payment in 1943 of the purchase price, and the erection of improvements. This evidence was not sufficient to establish an enforceable contract. Defendant's denial of

the alleged contract to convey, "invoked the statute of frauds as effectively as if it had been expressly pleaded. Furthermore, a denial of the agreement is equivalent to a plea of the statute of frauds." *Humphrey v. Faison,* 247 N.C. 127, 100 S.E. 2d 524; *McCraw v. Llewellyn,* 256 N.C. 213, 123 S.E. 2d 575. The fact that witnesses were permitted to testify without objection to the parol contract did not make it enforceable. *Jamerson v. Logan,* 228 N.C. 540, 46 S.E. 2d 561; *Grantham v. Grantham,* 205 N.C. 363, 171 S.E. 331. We fail to discover in the record any evidence to the effect that Albert conveyed this property to the Highway Commission at the direction of Curtis or that he declared Curtis was entitled to the proceeds.

The Court was in error in submitting to the jury an issue relating to the administrator's right to recover the amount paid by the Highway Commission. The fact that plaintiff administrator is. not entitled to recover from Albert the amount paid by the Highway Commission does not relieve Albert from the duty to account for the amount which Curtis contributed to the enhancement of the value of the property. The evidence offered with respect to the parol contract, the erection of improvements, and the sums paid by Curtis to Albert were competent for the purpose of showing that Albert had benefited by these expenditures. If he was unwilling to convey, equity required him to refund the amount paid by Curtis on the purchase money and to reimburse Curtis, or his estate, to the extent the property sold was enhanced by Curtis' work and expenditures. *Rochlin v. Construction Company,* 234 N.C. 443, 67 S.E. 2d 464; *Jamerson v. Logan, supra; Rhyne v. Sheppard,* 224 N.C. 734, 32 S.E. 2d 316; *Carter v. Carter,* 182 N.C. 186, 108 S.E. 765. The theory of the trial with respect to these properties was erroneous.

(4) *Administrator's claim for rents.* The jury found defendant was indebted to the estate of his brother Curtis in the sum of $13,450 for rents. This sum includes rents, not only from the Homeplace and Miller properties and the Cleveland Avenue property, but rents collected for use of the Belews Street property. It is impossible to determine what portion of this amount the jury attributed to rents for the Belews Street property. Defendant would not be responsible to Curtis' estate for all the rents collected for use of that property. In addition to the improvements erected thereon by Curtis, there were buildings erected by Albert. The rents from this property should be apportioned between Curtis' estate and Albert in accordance with their relative rights in the property.

The judgments charge defendant with interest on the sums found to be owing from 25 December 1958, the day of Curtis Hunt's death. Defendant has excepted and assigned this allowance of interest as error.

The verdicts on the first issues, finding defendants indebted, as plaintiffs alleged, for their portions of the moneys received for the Miller-

HUNT *v.* HUNT AND LUCAS *v.* HUNT.

Homeplace properties is equivalent to a finding that Albert had agreed to deposit the funds so that the income would be paid to Curtis for life with the principal then payable to the brothers or their estates. This fixed the date and the amount to be paid to each of the brothers. Interest accrued from that date on these sums.

Albert acted as agent in collecting rentals from the houses on Cleveland Avenue. Interest does not run on an account until there is a demand and refusal to pay. *Construction Company v. Crain & Denbo, Inc.,* 256 N.C. 110, 123 S.E. 2d 590; *Bond v. Cotton Mills,* 166 N.C. 20, 81 S.E. 936; *Jolly v. Bryan,* 86 N.C. 458; *Neal v. Freeman,* 85 N.C. 441; *Hyman v. Gray,* 49 N.C. 155.

Plaintiffs plead a demand and refusal to account, but there is neither in the pleadings nor in the evidence anything to establish the date of the alleged demand, other than the institution of this action on 19 May 1960. The Court should have fixed that date as the time on which interest began to accrue on the rents collected. The judgment rendered in favor of plaintiffs Hunt will be reformed so that interest will run on the $1,-820 from 19 May 1960, and not from 25 December 1958.

We have examined each of the other assignments of error in the action brought by the plaintiffs Hunt. We find neither prejudicial error nor any assignment requiring further discussion in that action. That judgment, modified as here directed, is free from prejudicial error.

The action brought by the administrator and the defendant's counterclaim present four separate and distinct controversies. We find no error in that portion of the judgment that plaintiff recover of the defendant $9,350 with interest from 25 December 1958, on plaintiff's first cause of action relating to the sale of the Homeplace and Miller property; nor has defendant, appellant, shown error with respect to that portion of the judgment adjudging that he is not entitled to recover anything on his counterclaim.

There was error in the trial as it relates to plaintiff's second and third causes of action. This entitles defendant to a new trial on appropriate issues relating to those causes of action.

*Hunt v. Hunt.* Modified and affirmed.

*Lucas, administrator v. Hunt.* Partial new trial.