**T. C. ALLEN CONSTRUCTION COMPANY, Appellant,**

**v.**

**STRATFORD CORPORATION, Appellee.**

**STRATFORD CORPORATION, Appellant,**

**v.**

**ALLEN CONSTRUCTION COMPANY, Appellee.**

**Nos. 10964, 10965 [1].**

United States Court of Appeals Fourth Circuit.

Argued March 9, 1967.

Decided Oct. 12, 1967.

1. Although Stratford Corporation cross-appealed from the judgment entered on the jury verdict and such appeal was docketed in this court under the within caption, neither party briefed nor argued the merits of the appeal before this court, and it is considered as having been abandoned. Nevertheless, the disposition herein of No. 10,964 also is determinative of No. 10,965 upon its merits.

Eugene H. Phillips, Winston-Salem, N. C., for T. C. Allen Const. Co.

Norwood Robinson and G. D. Humphrey, Jr., Winston-Salem, N. C. (Hudson, Ferrell, Petree, Stockton, Stockton & Robinson, Winston-Salem, N. C., on the brief), for Stratford Corp.

Before HAYNSWORTH, Chief Judge, CRAVEN, Circuit Judge, and SIMONS, District Judge.

SIMONS, District Judge:

Plaintiff-appellant, T. C. Allen Construction Company, (hereinafter referred to as plaintiff) brought suit against defendant-appellee, Stratford Corporation, (hereafter defendant) to recover a retained balance due it under a contract for the construction of a Downtowner Motor Inn in Winston-Salem, North Carolina, together with interest thereon from July 25, 1964, the date of its alleged completion of its contract.

For a proper understanding of the issues the following brief summary of the proceedings in the court below is stated.

In its complaint plaintiff alleged that it had substantially completed all work required of it under the terms of a written contract between the parties executed during June 1963, as it was subsequently modified by mutual agreement, and was entitled to the balance of $58,042.61 due thereunder. During the trial plaintiff voluntarily reduced its demand by $1500, upon its admission that there existed certain minor defects in its concrete work which would require that amount to correct. Accordingly, it amended its complaint to demand the amount of $56,542.-61.[2]

Defendant answered, asserting that it was not indebted to plaintiff in any amount because of the latter's improper

2. It was stipulated by the parties that this amount of the contract price remained unpaid. Thus, such amount would have been due to plaintiff by defendant if there had been no dispute about plaintiff's satisfactory performance of its contract.

and unworkmanlike manner of constructing the motel, that it had suffered damages as a result thereof far in excess of the balance due plaintiff, and counterclaimed for $75,000.00 damages allegedly resulting from plaintiff's failure to complete the construction work in a good and workmanlike manner in accordance with the contract plans and specifications.

Defendant went into possession of the motel in July or August 1964 and has operated it continuously since then.

At trial the evidence was in sharp conflict as to the manner in which plaintiff had performed the construction. Plaintiff's evidence supported its contentions that it had properly and substantially complied with its contract, and that $1500.00 was adequate to repair satisfactorily the minor defects or cracks in the cement work, which in no way affected the structural safety of the building. By the testimony of several expert witnesses defendant showed that plaintiff's workmanship was so shoddy and defective that it would require the expenditure of approximately $58,000.00 or more to make the construction conform to the contract standards.

Defendant's expert testimony established that the concrete construction work was primarily deficient in four general areas:[3] (a) That the topping in the basement was cracked and had failed to bond properly; the corrective measure recommended was to remove the topping and pour three to four inches of reinforced concrete; the estimated cost was $4–5,-000.00; (b) That the walkways were wavy, the aggregate showed in spots, and reinforcing rods were exposed; there was spalling on the outside walkways; as a corrective measure it was recommended that all of the topping be removed and

replaced by an epoxy topping which would produce a finish reasonably comparable to a smooth concrete surface as required by the contract; the estimated cost was $18,000.00; (c) That the terrazzo in the lobby was cracked; and it could reasonably be corrected by the installation of a resilient floor covering at estimated cost of $1,100.00; (d) That the topping on the driveway and the main parking area was in an advanced state of cracking and coming up; to correct properly the topping should be removed and replaced by a neotex type of apoxy at a total cost of $30,000.00, which would not produce as satisfactory result as good finished concrete required by the contract, but was considered to be the only practical solution at that stage.

The foregoing testimony on behalf of defendant was admitted by the trial judge over plaintiff's strenuous objection upon ground that the performing of such corrective measures would put the premises in different, more expensive, and better condition than the contract requirement. Plaintiff objected upon further ground that during the course of discovery, in answer to plaintiff's interrogatories about the claimed defects and the mode and cost of correcting them, defendant professed to have no such information, and refused to reveal its position in reference thereto when in fact it had such information.

After a full and adequate charge, the trial judge submitted the following three issues to the jury for its determination:

"(1) Has the plaintiff either fully or substantially performed its contract with the defendant?

(2) If so, what amount, if any, is the plaintiff entitled to recover of the defendant?

3. Defendant's counterclaim also alleged as an element of damages that plaintiff had failed to install a heating and air conditioning system in accordance with the plans and specifications. However, before trial this issue was resolved by a consent summary judgment in which the court found that it was at request of defendant that the contract had been modified by the substitution of a high velocity system which was installed in the motel instead of the low velocity system called for by original contract; that defendant had assumed all risks in connection therewith; and that no defense or counterclaim relating to such matter could be considered by the jury upon the trial of the case.

(3) What amount, if any, is the defendant entitled to recover of the plaintiff?"

During his main charge and in an additional charge the trial judge emphasized that if the jury should find substantial performance of the contract, it should award plaintiff the balance due on the contract of $56,542.61, less the fair and reasonable cost of correcting and repairing any defects required "to make the premises comply with the contract", which would put defendant "in the condition bargained for".

Plaintiff's counsel made several general objections to the court's main charge without stating any definite or particularized reason or ground therefor. No exception was taken to the court's additional charge when the jury returned to the courtroom during its deliberations with a request for additional instructions, which reiterated the same measure of damages outlined in the main charge.

Plaintiff admitted that at time of trial there was still due and owing by it to its subcontractors a total of $33,084.66. Upon oral argument before this court plaintiff's counsel advised that about $26,000.00 still remained unpaid. The contract provided that final payment to plaintiff would not be made until defendant's architect certified that all work required thereunder had been completed and accepted by him as satisfactory; further, that before the issuance of the architect's final certificate it was incumbent upon the contractor to submit satisfactory evidence that all payrolls, material bills, and other indebtedness in connection with the work had been paid.

The jury by its verdict answered issue number one in the affirmative, thus finding that plaintiff had substantially performed its contract. In answer to issue number two it awarded plaintiff the sum of $28,000.00. Thereupon, plaintiff mov-

ed to set aside the jury verdict upon ground of inadequacy which was denied. No issue as to interest was submitted to the jury, and the court entered judgment on the jury verdict in favor of plaintiff for $28,000.00, together with interest from the date execution was issued thereon. The judgment further provided that no execution would issue until ordered by the court upon notice and a showing that the claims of subcontractors against the funds represented by the judgment had been satisfied. Plaintiff duly excepted to the judgment, alleging error in its failure to provide for interest on the jury award from August 1, 1964 (the approximate date plaintiff completed its contract and defendant went into possession of the motel).

In its brief plaintiff urges the following three grounds [4] which entitle it to a new trial: (1) That the court below erred in admitting defendant's expert testimony as to the methods and costs of repairing plaintiff's allegedly defective work; (2) That the court committed prejudicial error in limiting its charge on the measure of damages to the "abstract rule of putting the premises in the condition called for by the contract", when all of defendant's evidence related to putting the premises in a different, more expensive, and better position than that contracted for; and (3) That the court erred in entering judgment upon the jury verdict which deprived plaintiff of interest on the sum found to be due it under the contract between the parties:

We find no merit to plaintiff's contentions relative to issues one and two and affirm the district court in this regard. We, however, conclude that the trial judge was in error in his failure to allow interest on the jury verdict from August 1, 1964, and remand with directions to modify the judgment in favor of plaintiff so as to provide for such interest.

4. In oral argument before this court plaintiff's counsel urged two bases upon which plaintiff seeks a new trial: (1) The admission into evidence over plaintiff's objection the costs of repairing plaintiff's allegedly defective work which would give defendant a better and more expensive job than required by the contract; and (2) failure of the court to allow interest on jury verdict from August 1, 1964.

■ Although plaintiff's counsel admits that defendant's expert testimony warranted the jury in reaching its verdict; nevertheless, it contends that such evidence was prejudicial to plaintiff and inadmissible upon the ground that such was (1) irrelevant to the issues, and (2) defendant had failed in answer to plaintiff's interrogatories to furnish plaintiff with its position and information as to the extent and amount of defects and corrective measures needed. There is no merit to such contention, as we do not agree that defendant failed during discovery and before trial to furnish plaintiff the requested information concerning the defects in the concrete work, the best method and the cost of repairing the same, and its witnesses who had information concerning these questions. In answer to plaintiff's interrogatories defendant provided it with substantially the requested information. Moreover, the pretrial order dated February 4, 1966 (five months prior to trial), consented to by plaintiff's counsel and approved by the trial judge, gave a list of defendant's proposed expert witnesses and a brief statement of what the testimony of each would be. In addition plaintiff was advised of the nature and extent of the alleged defects, and the method and the approximate cost of repairs ($58,000.00).

The receiving of such testimony under the circumstances was well within the discretion of the trial judge. Furthermore, it was relevant and responsive to the issues. We, therefore, conclude that there was no abuse of discretion on the part of the court below in admitting such evidence; neither did any prejudicial error result therefrom.

■■ The trial judge repeatedly instructed the jury in his main charge and again during his supplemental instructions that if they found defects to exist in plaintiff's construction work as claimed by defendant, then "the measure of

damages" would be the cost of corrective measures to bring the construction up to "contract standards or requirements". Plaintiff's counsel did not seasonably specifically object to the charge relative to such measure of damages, and did not request an additional charge that the proper measure of damages was the difference in the market value of the motel as constructed and its market value if completed in accordance with such contract, which it now contends is the correct measure of damages applicable to the facts and should have been submitted to the jury. Plaintiff's counsel's objection to the judge's charge as to the measure of damages to be applied by the jury was directed principally to the court's failure to instruct the jury that the defendant "in no event would be entitled to receive repairs of a superior nature to what had been contracted for". Such objection was entirely too general and did not distinctly state the matter to which counsel objected and the grounds of his objection, as required by Rule 51 [5] of the Federal Rules of Civil Procedure. Therefore, plaintiff has waived any such error or omission in the charge and cannot now complain. A timely and proper objection to a judge's charge must be given before the jury retires to commence its deliberations, in order that the trial judge may have a reasonable opportunity to correct any alleged error or omission.

Plaintiff's counsel concedes that the measure of damages charged by the court to the jury as to the costs of repairing defects is good North Carolina law in reference to minor or inconsequential defects, but that such principle is not applicable where there are major defects requiring substantial alterations, such as those claimed by defendant.

■ The jury verdict determined specifically that plaintiff had substantially performed its contract when it answered issue number one in the affirmative.

5. Rule 51, Federal Rules of Civil Procedure, provides in part:
"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

In answer to issue number two finding that defendant owed plaintiff $28,000.00 balance under the contract the jury determined that it would reasonably require the expenditure of $30,042.61 to place the premises in the condition required by the contract. Such verdict was amply and fully supported by the evidence.

■ We conclude that the trial judge submitted to the jury the proper measure of damages required by the testimony in full accord with the applicable North Carolina law. Such principle was enunciated by the North Carolina Supreme Court in Durham Lumber Co. v. Wrenn-Wilson Construction Co., 249 N.C. 680, 107 S.E.2d 538, at pages 540–541 (1959):

"Where a building contract is substantially, but not exactly, performed, the amount recoverable by the contractor depends upon the nature of the defects or omissions. 'Where the defects or omissions are of such a character as to be capable of being remedied, the proper rule for measuring the amount recoverable by the contractor is the contract price less the reasonable cost of remedying the defects or omissions so as to make the building conform to the contract.' * * *

"In an action to recover the unpaid portion of the contract price, the defendant, under his denial of plaintiff's alleged performance, may show, in diminution of plaintiff's recovery, the reasonable cost of supplying omissions, if any, and of remedying defects, if any; and, if such costs exceed the unpaid portion of the contract price, the defendant may, by counterclaim, recover the amount of such excess." (Citations omitted).

In the later case of Robbins v. C. W. Myers Trading Post, Inc., 251 N.C. 663, 111 S.E.2d 884 (1960), the North Carolina Supreme Court, quoting with approval from 9 Am.Jur., § 152, page 89, stated:

" 'The fundamental principle which underlies the decisions regarding the measure of damages for defects or omissions in the performance of a building or construction contract is that a party is entitled to have what he contracts for or its equivalent. What the equivalent is depends upon the circumstances of the case. In a majority of jurisdictions, where the defects are such that they may be remedied without the destruction of any substantial part of the benefit which the owner's property has received by reason of the contractor's work, the equivalent to which the owner is entitled is the cost of making the work conform to the contract. But where, in order to conform the work to the contract requirements, a substantial part of what has been done must be undone, and the contractor has acted in good faith, or the owner has taken possession, the latter is not permitted to recover the cost of making the change, but may recover the difference in value.' * * * The difference referred to is the difference between the value of the house contracted for and the value of the house built—the values to be determined as of the date of tender or delivery of possession to the owner."

See also Moss v. Best Knitting Mills, 190 N.C. 644, 130 S.E. 635 (1939).

We find no basis in the record to support plaintiff's contention that the trial judge submitted the wrong measure of damages to the jury. There is no evidence tending to establish that "in order to conform the work to the contract requirements, a substantial part of what has been done must be undone". Robbins v. C. W. Myers Trading Post, Inc., supra. The only reasonable inference deducible from the testimony is that whatever defects existed in plaintiff's construction work could be adequately remedied without a substantial undoing or destruction of the premises. Therefore, the trial judge was correct in instructing the jury that the cost of labor and materials necessary to make the construction conform to the contract was the proper measure of damages.

In view of the applicable North Carolina Supreme Court decisions and the

North Carolina General Statute [6] we conclude that the judgment entered by the court below on the jury verdict should have provided for interest thereon from August 1, 1964 (the date upon which the jury concluded that plaintiff had substantially performed its contract), even though there was a *bona fide* dispute as to the correct balance due between plaintiff and defendant. In Perry v. Norton, 182 N.C. 585, 109 S.E. 641 (1921), in allowing interest on the sum found to be due plaintiff for services rendered and improvements made on a *quantum meruit* basis, no part of the amount being liquidated, the court said:

"In this the trial judge simply followed the law as established by the decisions of this court. * * * The statute says that all sums of money due by contract of any kind, excepting money due on penal bonds, shall bear interest. * * * From this it would seem to follow in this state that whenever a recovery is had for a breach of contract and the amount is ascertained from the terms of the contract itself or for [sic] evidence relevant to the inquiry, that interest should be added. * * *

"It was argued by the defendants that, as the court did not instruct as to giving interest in the verdict, the jury may have done so, and defendants would thereby pay double interest, but we think this cannot be assumed, but that the presumption is the other way, that the jury did not allow interest, nothing having been said by counsel or the court with respect to it. In adding interest, the court was merely complying with the statute and following the precedents in this Court.

"It will be noted that in this case the defendants got the benefit of both the labor and money of the plaintiff—his labor in the service of the defendants for four years and his money in the improvement of the house and lot that they agreed should be deeded to him, but which they conveyed to another in the wholesale conveyance of their large estate."

See also Harris & Harris Construction Co. v. Crain & Denbo, Inc., 256 N.C. 110, 123 S.E.2d 590, at page 602 (1962) wherein the court stated:

"Since the decision in Bond [7] there has been a definite trend in the North Carolina cases toward allowance of interest in almost all types of cases involving breach of contract. The following cases should be examined in this light. In Perry v. Norton, 182 N.C. 585, 109 S.E. 641, defendant, in order to retain plaintiff as an employee promised plaintiff $40.00 per month salary, a house rent free, and to deed plaintiff the house when the plantation on which it was located was sold. Defendant sold the plantation and house to another. Plaintiff sued for value of improvements made on the house and land, and for services rendered. He recovered judgment with interest from the date of the sale of the plantation. This Court affirmed stating that 'the jury "ascertained from the terms (of the agreement) and the relevant evidence" the amount of the plaintiff's claim.' Thomas v. Piedmont Realty & Development Company, 195 N.C. 591, 143 S.E. 144, was a suit

6. The North Carolina General Statute provides as follows:
"G.S. § 24–5. *Contracts, except penal bonds, and judgments to bear interest; jury to distinguish principal.*— All sums of money, due by contract of any kind, excepting money due on penal bonds, shall bear interest, and when a jury shall render a verdict therefor they shall distinguish the principal from the sum allowed as interest; and the principal sum due on all such contracts shall bear interest from the time of rendering judgment thereon until it is paid and satisfied. In like manner, the amount of any judgment or decree, except the costs, rendered or adjudged in any kind of action, though not on contract, shall bear interest till paid, and the judgment and decree of the court shall be rendered according to this section."

7. Bond v. Pickett Cotton Mills, 166 N.C. 20, 81 S.E. 936.

upon *quantum meruit* for services rendered. The Court declared that the measure of damages was 'the reasonable value of the services rendered.'

Plaintiff recovered $18,500 with interest from 5 June 1925, the date on which services were completed and demand for payment was made. The Supreme Court found no error and stated: 'This sum is due, by contract, and under C.S. 2309 (now G.S. § 24–5) bears interest from the date on which it was due.'"

See also American Casualty Company of Reading, Pa. v. Gerald, 369 F.2d 829 (4th Cir. 1966); Hunt v. Hunt, 261 N.C. 437, 135 S.E.2d 195 (1964); Miller Equipment Co. v. Colonial Steel and Iron Co. et al., decided July 20, 1967, 383 F.2d 669 (4th Cir.).[8]

█ In General Metals, Inc. v. Truitt Mfg. Co., 259 N.C. 709, 131 S.E.2d 360 (1963), the North Carolina Supreme Court summarized the recent trend as to interest in its decisions as follows:

"The time when interest begins to run upon a debt, the amount of which is in dispute and finally determined by judgment, has been before this Court many times. The later cases following the enactment of G.S. § 24–5 seem to have established this rule: When the amount of damages in a breach of contract action is ascertained from the contract itself, or from relevant evidence, or from both, interest should be allowed from the date of the breach. * * * The court's action in allowing interest from March 15, 1958, finds support in the record and the cases cited." (Citations omitted).

By its verdict the jury concluded that planitiff had substantially perform-

ed its contract, and that defendant owed plaintiff a balance of $28,000 thereunder. Such determination and the amount found due were "ascertained from the contract itself, or from relevant evidence, or from both", and interest should have been allowed from the date of plaintiff's substantial performance.

The action will be remanded to the district court with direction that the judgment entered on the jury verdict be modified to provide for interest on the jury award at the legal rate from August 1, 1964 until paid.

Affirmed in part and remanded with instructions.

---

8. The facts in Miller, also a North Carolina case involving the law of that state, are similar to the facts in the instant case. Miller sought recovery of the balance due it under its contract with Colonial Steel and Iron Company to fabricate structural steel to be incorporated in a federal bridge project in Virginia. The court below found that Miller had defaulted in the performance of its contract and was therefore not entitled to the payment

of the balance of the contract price. This court reversed, finding that Miller had not breached its contract and was entitled to recover the balance due under its contract with Colonial, and remanded to the district court for entry of judgment in favor of Miller for such balance due "with interest thereon at the rate of 6% per annum from February 27, 1964 until paid (being the date that Miller completed the performance of its contract)."