IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-263

Filed 7 May 2024

Mecklenburg County, No. 16CVD9361

TIMOTHY WILLIE SCOTT, Plaintiff,

v.

ALECIA MANN SCOTT, Defendant.

Appeal by defendant from order entered 21 November 2022 by Judge Christy T. Mann in District Court, Mecklenburg County. Heard in the Court of Appeals 19 September 2023.

> *Plumides, Romano & Johnson, P.C., by Richard B. Johnson, for plaintiff-appellee.*
>
> *The Blain Law Firm, P.C., by Sabrina Blain, for defendant-appellant.*

STROUD, Judge.

Defendant Mother appeals from the trial court's order modifying child custody and argues the trial court lacked jurisdiction to modify custody because the parties had not attended mediation. She also contends the trial court did not make sufficient findings of fact to support its conclusions of law that a substantial change in circumstances affecting the welfare of the child had occurred. The consent order's provision regarding attending "mediation or arbitration" to resolve disagreement on decisions about "the general health, welfare, religious training, education and

development of the child" before "submitting the issue to the court" did not create a "condition precedent" to the trial court's jurisdiction to modify child custody. Mother did not challenge any of the trial court's findings of fact as unsupported by the evidence, and those findings support the trial court's conclusions of law. We therefore affirm the trial court's order.

## I. Background

Mother and Father were married in 2015 and separated in 2019. One child, Tom,[1] was born to the marriage in 2015. Father filed an action seeking child custody[2] and on 12 July 2021, the trial court entered a "Consent Order: Permanent Child Custody" (capitalization altered) (the "Consent Order"). The Consent Order granted joint legal and physical custody of Tom to the parties and set out a detailed schedule for "regular parenting time" and "summer/holiday parenting time" (capitalization altered) for each parent and many provisions regarding decision-making, access to records and information, communications, and other issues. The Consent Order did not include findings of fact and both parties consented that they "waive any challenge or appeal of this Order based upon lack of Findings of Fact or Conclusions of Law."

---

[1] We have used a pseudonym to protect the identity of the minor child.

[2] Our record does not include any pleadings or other documents in the case prior to the Consent Order. We note that the pleadings should be included in the Record on appeal. *See* N.C. R. App. P. 9(a)(1)(d) ("The printed record in civil actions . . . shall contain . . . copies of the pleadings[.]").

As relevant to this appeal, the Consent Order's decree regarding "Legal Custody" provided as follows:

> The parties shall share joint legal custody of the minor child. Mother and Father shall work together to decide issues of lasting significance for the minor child. The parties shall cooperate with each other, consult in good faith with each other and endeavor to agree on all major decisions regarding the minor child, including, medical treatment, dental treatment, religion, counseling, extracurricular activities, and all other major decisions. If the parties are unable to agree on major decisions regarding the general health, welfare, religious training, education and development of the child, the parties shall timely attend mediation or arbitration before submitting the issue to the court.

On 25 March 2022, Father filed a motion to modify child custody and child support. He alleged "substantial and material changes in circumstances affecting the welfare of the minor child" which required modification of the custody provisions of the Consent Order. Generally, Father alleged Mother's employment schedule had changed, requiring her to spend substantial time away from home, and she had failed to advise Father of her travel schedule or "offer him the right of first refusal to care for the minor child." He alleged that in mid-January of 2022, Mother relied on the paternal grandparents to care for the child, and Mother then left North Carolina from 25 January 2022 until 21 March 2022. The child lived primarily with Father while Mother was out of North Carolina. He also alleged the "parties' ability to communicate has deteriorated," as shown by Mother's failure to notify Father regarding her travels and her "offensive and/or vulgar messages" to him.

On 25 August 2022, Mother filed a reply to Father's motion, in which she denied some allegations of Father's motion and admitted others. As relevant to this appeal, in response to Father's allegations regarding changes of circumstances justifying a modification of custody, Mother admitted that "a change of circumstances exists," although she did not admit all the facts as alleged by Father. Mother also asked the court to recalculate child support. Mother did not object to Father's filing of his motion to modify custody based on his failure to first request mediation or arbitration, nor did she make any request to attend mediation or arbitration.[3]

On 29 August 2022, the trial court held a hearing regarding Father's motion for modification of custody and child support, and the trial court entered its "Modification of Child Custody Order" (capitalization altered) (the "Modification Order") on 21 November 2022.[4] Mother timely filed notice of appeal from the Modification Order.

## II.    Appellate Jurisdiction

---

[3] We note the Local Rules of Family Court in Mecklenburg County require mediation of motions to modify custody. Rule 7A.3 provides "[t]he Parties to all custody and visitation cases, including modifications motions shall receive from the Court an order for custody mediation and parent education with specific dates for attendance and deadlines for completion." *See* Mecklenburg Cnty. Family Ct. R. 7A.3. The trial court can waive mediation under Rule 7A.6. *See* Mecklenburg Cnty. Family Ct. R. 7A.6. Considering the deficiencies in the record before this Court and the lack of a transcript, we realize it is entirely possible the parties attended mediation as required by the Local Rules, although this mediation would have occurred *after* the filing of Father's motion to modify custody, not before.

[4] The Modification Order states it was "[a]nnounced in open court on February 17, 2022 and signed this the 18 day of November, 2022." It was filed on 21 November 2022. Since the hearing was held on 29 August 2022, we assume the reference to February 17, 2022 is a clerical error, but this date does not affect our analysis.

Mother's brief states the trial court's order is a "final judgment on the merits" and appeal lies to this Court under North Carolina General Statute Section 7A-27(b). However, the Modification Order addressed only child custody, leaving issues of child support and attorney's fees raised by both Father's motion and Mother's reply unresolved. That means the Modification Order is an interlocutory order, as it fails to resolve the entire controversy. *See Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." (citation omitted)). "Generally, there is no right to appeal from an interlocutory order." *Flitt v. Flitt*, 149 N.C. App. 475, 477, 561 S.E.2d 511, 513 (2002) (citations omitted). But under North Carolina General Statute Section 50-19.1, this Court has jurisdiction to consider Mother's appeal, because the Modification Order is a final order as to child custody. *See* N.C. Gen. Stat. § 50-19.1 (2023) ("Notwithstanding any other pending claims filed in the same action, a party may appeal from an order or judgment adjudicating a claim for absolute divorce, divorce from bed and board, the validity of a premarital agreement as defined by G.S. 52B-2(1), child custody, child support, alimony, or equitable distribution if the order or judgment would otherwise be a final order or judgment within the meaning of G.S. 1A-1, Rule 54(b), but for the other pending claims in the same action.").

### III.    Jurisdiction of Trial Court to Modify Custody

Mother first contends the "trial court was without jurisdiction to modify the Consent Order . . . because of a condition precedent contained therein with which Father did not comply." (Capitalization altered.)

## A. Standard of Review

"Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citation omitted).

## B. Analysis

Mother did not raise any objection regarding jurisdiction before the trial court. But we recognize the issue of subject matter jurisdiction can be raised at any time, even for the first time on appeal. *See Standridge v. Standridge*, 259 N.C. App. 834, 835, 817 S.E.2d 463, 464 (2018). In addition, parties cannot confer jurisdiction by consent.[5] *See id.* at 836, 817 S.E.2d at 464 (noting "if a court does not have subject matter jurisdiction over a claim, the parties cannot confer jurisdiction on the court by their agreement to have the court rule on their case").

Mother seeks to rely on cases addressing contractual rights to argue the trial court lacked subject matter jurisdiction to modify child custody. For example, Mother

---

[5] Although Mother argues the trial court lacked jurisdiction to modify child custody, the Statement of Jurisdiction in the Record on Appeal states that "The parties acknowledge that the Mecklenburg County District Court had personal and subject matter jurisdiction."

cites *Farmers Bank, Pilot Mountain v. Michael T. Brown Distributors, Inc.*, 307 N.C.

342, 298 S.E.2d 357 (1983), regarding contractual conditions precedent:

> Conditions precedent "are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." 3A A. Corbin, Corbin on Contracts § 628, at 16 (1960).

*Id.* at 350, 298 S.E.2d at 362. Mother also cites *Davis v. Davis*, 78 N.C. App. 464, 337

S.E.2d 190 (1985), where this Court held that although the wife had waived alimony

in the parties' separation agreement, the trial court properly entered a consent order

which required the husband pay her medical expenses based on the consent of both

husband and wife:

> The principle is well-established that "a consent judgment is a contract between the parties entered upon the record with the approval and sanction of the court," *Coastal Production Credit v. Goodson Farms*, 71 N.C. App. 421, 422, 322 S.E.2d 398, 399 (1984), and "must be construed in the same manner as a contract to ascertain the intent of the parties." *Bland v. Bland*, 21 N.C. App. 192, 195, 203 S.E.2d 639, 641 (1974).

*Id.* at 469, 337 S.E.2d at 192 (brackets omitted). Mother argues the provision of the

Consent Order requiring the parties to go to mediation or arbitration "before

submitting the issue to the court" to resolve any disagreements regarding "major

decisions regarding the minor child, including, medical treatment, dental treatment,

religion, counseling, extracurricular activities, and all other major decisions" is a

"condition precedent" to the trial court's exercise of subject matter jurisdiction. In her reply brief, Mother clarifies that her

> argument is that *Father* cannot file a motion to modify because he has not complied with the condition precedent. As soon as Father complies with the condition precedent he can file. In the meantime, if there is some emergency or if someone with standing, who has complied with the condition precedent or is not subject to the condition precedent files to modify, the Court's jurisdiction is unaffected.

(Emphasis in original.) Based on the reply brief, Mother's argument seems not to be that the trial court lacks jurisdiction but instead that Father did not have standing to file a motion to modify unless he has complied with the "condition precedent." Either way, Mother's argument is entirely misplaced.

First, child custody issues are uniquely within the purview of the trial court, despite contractual agreements between a mother and father. This Court has explained:

> [w]hile it is clear that a husband and wife may bind themselves by a separation agreement, it is equally clear that "no agreement or contract between husband and wife will serve to deprive the courts of their inherent as well as their statutory authority to protect the interests and provide for the welfare of infants." *Baker v. Showalter*, 151 N.C. App. 546, 551, 566 S.E.2d 172, 175 (2002) (quoting *Fuchs v. Fuchs*, 260 N.C. 635, 639, 133 S.E.2d 487, 491 (1963)). Such separation agreements "are not final and binding as to the custody of minor children or as to the amount to be provided for the support and education of such minor children." *Hinkle v. Hinkle,* 266 N.C. 189, 195, 146 S.E.2d 73, 77 (1966). This is so because "the welfare of the child is the 'polar star' which guides the court's

discretion in custody determinations." *Evans v. Evans*, 138
N.C. App. 135, 141, 530 S.E.2d 576, 580 (2000).

*Mohr v. Mohr*, 155 N.C. App. 421, 425-26, 573 S.E.2d 729, 732 (2002) (brackets omitted). Although the provision regarding mediation or arbitration was included in a consent order, not a separation agreement or other contract between the parties, it still does not create a jurisdictional bar of any sort to the trial court's ruling on a motion to modify custody, nor does it prevent either Mother or Father from filing a motion to modify custody. Had either parent requested mediation or arbitration before the hearing on the motion for modification, the trial court could have ruled on that request, but neither party raised this issue before the trial court.

Mother did not ask for mediation or arbitration before the trial court. Instead, she admitted many allegations of Father's motion for modification. Mother has therefore waived review of any issue as to the lack of arbitration or mediation before the trial court's modification of custody. *See* N.C. R. App. P. 10 ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").

The Consent Order's provisions created no jurisdictional prerequisite of mediation or arbitration before Father could file a motion to modify custody or for the trial court to address modification of custody. Mother did not present any request for

mediation or arbitration before the trial court, so she has waived any argument on appeal regarding the lack of mediation or arbitration as to child custody.

## IV.     Findings of Fact

Mother next contends "the trial court made insufficient findings of fact to support its conclusions of law that a substantial change in circumstances affecting the welfare of the child had occurred." (Capitalization altered.)

Our understanding of Mother's argument in her primary brief is that she has not challenged any of the trial court's findings of fact as unsupported by the evidence, although in her brief she "assigns error and challenges" fifteen of the trial court's findings. Instead, Mother argues as to each finding the trial court should have made more or different findings. Father also understood Mother's brief as failing to challenge the findings as unsupported by the evidence. Father notes that under North Carolina Rule of Appellate Procedure 9(c), Mother cannot challenge the findings on the record before us because she did not provide a transcript of the hearing and included only one of the fourteen exhibits admitted at trial. In her reply brief, Mother responds that "Father misconstrues Mother's arguments" as being that the findings by the trial court were "too meager to support its Conclusions of Law, which are together insufficient to support its Orders." Mother clarifies that she *did* contend "that the challenged [findings of fact] are unsupported by the record." She also states Father "did not participate in the construction of the record" but he only "kicks back' and simply states: 'no transcript. But that is not enough."

But it is enough. Father is correct: without a transcript, we must accept the trial court's findings of fact as supported by the evidence. It is well-established that the *appellant* – not the appellee – has the duty to ensure that the record is complete. *See Fox v. Fox*, 283 N.C. App. 336, 354-55, 873 S.E.2d 653, 667 (2022) ("Relatedly, under North Carolina Rules of Appellate Procedure 7, 9, and 11, the burden is placed upon the appellant to commence settlement of the record on appeal, including providing a verbatim transcript if available." (citation, quotation marks, and brackets omitted)). Even if we interpreted Mother's arguments as addressing the sufficiency of the evidence to support the findings, Mother did not include the transcript from the hearing in the record on appeal. Without the transcript, we must assume the trial court's findings are supported by the evidence. This Court addressed the same issue in *Hicks v. Alford,* 156 N.C. App. 384, 389-90, 576 S.E.2d 410, 414 (2003):

> Plaintiff further argues that there was insufficient evidence to support the trial court's findings concerning the effect of the substantial change in circumstances on the minor child. Plaintiff failed to include in her appeal a transcript of the evidence presented to the trial court. Nor was a transcript of the evidence included in plaintiff's previous appeal of this matter to the Court. "If the appellant intends to urge on appeal that a finding or conclusion of the trial court is unsupported by the evidence or is contrary to the evidence, the appellant shall file with the record on appeal a transcript of all evidence relevant to such finding or conclusion." N.C.R. App. P. 7(a)(1) (2003). Similarly, Rule 9 of the North Carolina Rules of Appellate Procedure requires the appellant to include in the record on appeal "so much of the evidence . . . as is necessary for an understanding of all errors assigned." N.C.R. App. P. 9(a)(1)(e) (2003). It is the duty of the appellant to ensure

- 11 -

> that the record is complete. *See State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 644 (1983). "An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court." *State v. Williams*, 274 N.C. 328, 333, 163 S.E.2d 353, 357 (1968). Without the transcript, we are unable to review plaintiff's argument that the trial court erred in making findings of fact that are unsupported by the evidence. *See Pharr v. Worley*, 125 N.C. App. 136, 139, 479 S.E.2d 32, 34 (1997) (concluding that, where the appellant failed to include relevant portions of the transcript on appeal, the Court would not engage in speculation as to potential error by the trial court). We therefore overrule this assignment of error.

*Id.* at 389-90, 576 S.E.2d at 414. We also note Mother did include one trial exhibit in the record on appeal: 525 pages of the minor child's unredacted medical records. These records are replete with personal information regarding the parties, including addresses, phone numbers, and email addresses, as well as the personal medical information of the minor child. We have *sua sponte* sealed the record on appeal to protect the minor child. *Cf. Frazier v. Frazier*, 286 N.C. App. 565, 566, 881 S.E.2d 839, 840 (2022) ("Plaintiff, as the appellant, bore the burden of ensuring that the record on appeal was complete, properly settled, in correct form, and filed." (citation and quotation marks omitted)). Unfortunately, Mother did include in the record confidential medical records of the child, confidential records of a child abuse investigation by Wake County Child Protective Services ("CPS") and the Nash County Department of Social Services ("DSS"), and records including voluminous personal identifying information of the child and the parties. "This Court has *sua sponte* sealed

the record to protect the personal identifying information and confidential medical information of the child to the extent we can." *Id.* We remind the parties and counsel that filings in this Court are freely available online and they should take care to protect the minor child's privacy in any future proceedings before the trial court or any appellate court.

We cannot review the findings of fact based on the record before this Court, and Mother's argument is without merit.

## V. Conclusions of Law

Mother also contends the trial court's "Conclusions of Law are unsupported by the Findings of Fact and thus do not support the Court's Orders." In support of this argument, purportedly challenging all ten of the trial court's conclusions of law,[6] Mother cites a few snippets from cases but she makes no argument connecting these snippets to the trial court's conclusions of law. In her reply brief, Mother clarifies that "there is no [finding of fact] shedding light on the way in which the parties were unable to follow the custodial arrangements, or indeed that the custodial arrangements were not followed."

Mother's argument overlooks the trial court's actual findings of fact. The trial court's findings of fact shed more than enough light on the changes in circumstances,

---

[6] We assume Mother does not actually object to the trial court's conclusion that *she* is a "fit and proper person[] to share the permanent legal care, custody, and control of the parties' aforesaid minor child" or the conclusion that she is a "fit and proper person to have secondary custody with reasonable and liberal visitation with the minor child."

including the ability of the parties to follow the custodial arrangements in the Consent Order after "the first few months" following entry of the Consent Order. Specifically, in January of 2022, Mother requested help from the paternal grandparents to keep the child when she had to "go out of state for work." The grandparents agreed to keep Tom during Mother's custodial time. Shortly after Mother left the state, Father and the grandparents agreed Tom would live exclusively with Father. The trial court also made findings regarding the changes in the child's "personality and demeanor" since the Consent Order's entry. Specifically, the trial court found the child had become "less trusting, disrespectful, fearful, angry, and throws temper tantrums." The trial court found the child's living arrangements in the joint custodial situation had "become disruptive" and "had an adverse effect on the minor child." The trial court further noted the parties had been "unable to co-parent" and "their communication is ineffective and can become hostile and disruptive," with a "negative impact on the minor child."

The trial court's findings support its conclusions of law, and particularly its conclusions that "there has been a substantial and material change in circumstances affecting the welfare of the minor child which warrants the Court to modify the existing child custody provisions of the Consent Order" and that it is in the child's best interest to grant joint legal custody to both parties and primary physical custody to Father.

## VI.    Conclusion

The trial court had subject matter jurisdiction to enter the Modification Order as the Consent Order did not create any jurisdictional prerequisite for filing a motion to modify custody. Even assuming the Consent Order contemplated mediation or arbitration before filing a motion to modify custody, neither party requested mediation or arbitration. The trial court's unchallenged findings of fact support its conclusions of law, so we affirm the Modification Order.

AFFIRMED.

Judges MURPHY and FLOOD concur.